## CREAMER a. JACKSON.

*Supreme Court, First District ; Special Term, March,* 1857.

TESTIMONY TAKEN UPON COMMISSION.—DUTIES OF COMMISSIONER.
—WITNESS TESTIFYING FROM MEMORANDA.

The power to issue a commission to examine witnesses abroad is an innovation upon the common law, and should be strictly exercised.

The absence of the return which the statute requires the commissioner to endorse upon the commission, though it might be a good reason for not allowing the deposition to be read upon the trial, is not ground for suppressing the deposition upon motion.

*Quere ?*—Whether the defect might be supplied by sending back the commission to the commissioner that he might make the proper return.

Where the taking of a deposition having been commenced, it was adjourned after four or five interrogatories were answered, upon the witness refusing to answer further because of vertigo and consequent confusion of mind, and subsequently the witness appeared again with his counsel, and the examination being commenced from the beginning, the witness read his answers from a paper he brought, which had been prepared by himself and counsel, and was in his counsel's handwriting,—

*Held,* upon motion, that the deposition must be suppressed.

*It seems* that in such a case the answers taken upon the first examination should not have been disregarded by the commissioner ; but that the proceedings should have been stated by him as they took place, and both examinations should have been included in the deposition returned.

Motion to suppress a deposition taken upon commission.

This was an action brought upon a promissory note, against the endorser. The defence was usury in the inception of the note, and the defendants obtained a commission to be issued to take the testimony of one Perry, the maker, then in the State of New Jersey.

Upon the return of the commission, the plaintiff moved to suppress the deposition. The affidavit of the commissioner who executed the deposition, showed that upon receiving the commission, he " appointed the 6th day of December, at deponent's office, for executing said commission, and gave notice to the witness Perry and to the plaintiff's attorney of the time and place of executing the same ;—that at the time and place appointed said Perry attended for examination, and said plaintiff's

attorney also was present;—that said Perry was thereupon examined by deponent upon the interrogatories annexed to the commission, and proceeded with such examination to the sixth interrogatory, when said Perry hesitated to answer, and informed deponent that he felt a return of an old disorder, which had afflicted him since his return from Europe, a short time previous, namely, a species of vertigo, or rush of blood to the head;—that when under the influence of such disorder, said Perry's mind became confused, and he found it difficult to understand what was said to him;—that his (said Perry's) head then began to ache badly, and he would prefer for that reason not to proceed further with said examination at that time;—that deponent acquiesced in said Perry's request, and thereupon said Perry left deponent's office to go to his home. Deponent further says that he did not observe any peculiarity in said Perry's conduct at the time of the second examination (which was on the 9th), under said commission, nor at any other time.

" Deponent further says that he saw said Perry have in his hand at the time of said second examination a memorandum in writing, to which he referred in giving his testimony; but deponent did not examine the same, and does not know what the contents thereof were, nor in whose handwriting the same was.

" Deponent further says that the reason why deponent did not return the testimony of said Perry, taken at said first examination, was, that deponent supposed that the illness of said Perry might have been coming on for some few minutes previous to the mention of it by said Perry, and that it would be more satisfactory to all parties and to said Perry, that he should be examined anew upon all the interrogatories from the beginning."

It appeared by the affidavit of the plaintiff's attorney, " that said Perry, on said 9th of December, did read in answer to said interrogatories, copies of written answers, which had been prepared before such examination commenced; that when said Perry began to read said answers, deponent requested said Perry to inform deponent whether said written answers were in said Perry's handwriting, or had been composed by said Perry, and said Perry refused to answer deponent in relation thereto; that deponent thereupon stated to said Perry and said Emmet (the commissioner) that deponent objected to said Perry's so

reciting his answers from such copies as unlawful and improper, but that said Perry continued so to read his answers from such copies, and said Emmet continued to reduce to writing said Perry's answers so read as the deposition of said Perry under said commission.

" Deponent further says that after said examination was concluded, deponent examined the paper from which said Perry had so read his answers, and compared the same with the notes deponent had taken of the answers said Perry had given to the interrogatories. And deponent verily believes that the answer to the fifth interrogatory, and the answer to all the following direct interrogatories, were recited verbatim from said written memorandum by said Perry, and taken by said Emmet as the depositions of said Perry under said commission.

" Deponent further says that he has seen said Perry write, and knows his handwriting, and that he verily believes that no part of said written memorandum was in the handwriting of said Perry."

It appeared by the affidavit of C. R. Waugh, Esq., the counsel of Perry, " that he had known said Perry and had been his legal counsel for four or five years last past; that said Perry had been and was subject to the sick-headache, which caused a temporary confusion of mind, which soon passed away ; that the general health of said Perry was in other respects good, and that he was not nor ever had been, to the knowledge of deponent, in any respect insane or out of his right mind.

" Deponent further says that said Perry is the maker of the note on which this action is brought; that a long time ago a claim was made against Perry arising out of the transaction in which this note was given, in respect to which deponent was consulted by said Perry as his counsel; that deponent thus became familiar with the facts relating to the giving of said note, and the circumstances attending the transaction aforesaid ; that a day or two previous to the second examination of said Perry under the commission, said Perry called upon deponent and informed him that he (said Perry) had been notified to attend for examination as a witness under said commission, and that as the transaction in question was an old matter, he would like to talk over the matter with deponent, and refresh his recollection of the facts, and that thereupon deponent and said Perry sat

down together in deponent's office, and together made a brief memorandum of the facts which said Perry supposed he would be interrogated upon.   Deponent further says that, knowing said Perry's liability to sudden attacks of the disorder above mentioned, deponent, in accordance with the wish of said Perry and at Perry's request, attended the second examination of said Perry under said commission."

*Aaron & Dayton Ogden,* for the motion.   The deposition should be suppressed, because the interrogatories were altered after settlement; the witness was of unsound mind; the commissioner made no sufficient return; the answers taken at the first examination were not inserted in the deposition; the witness read his answers from a paper in a strange handwriting; such testimony is hearsay.

*Buckham, Smales,* and *Greene,* opposed.

BIRDSEYE, J.—In Jackson *v.* Hobby (20 *Johns.,* 361), it was said that the statute authorizing the issuing of commissions to take the testimony of witnesses residing abroad, was an innovation on the common law rules of evidence, and that its positive requirements must be strictly complied with.   The principle has ever since been acted upon and generally acquiesced in.   It is, in substance, repeated in Dwinelle *v.* Howland (1 *Abbotts' Pr. R.,* 89).   It is there said that the taking testimony upon commission was always considered an innovation, which should be exactly dealt with, as a departure from a mode of presenting evidence which has ever been justly considered one of the best safeguards in the trial of facts.   The principle is undoubtedly a safe one ; although, as happens to be within my knowledge, the decision in that case does not turn upon the main question presented in it.   The facts of that case were, that the defendants' attorneys, who took the objection to the manner in which the commission was returned, had, prior to the issuing of the commission, signed a stipulation consenting to the issuing of the commission and to its return—precisely as it was returned. The order for the commission was, in fact, made upon this stipulation, and pursued its terms ; and, instead of procuring from a judge of the court the usual direction how the commission should

be returned, another stipulation was endorsed on it, and signed by the attorneys for the defendants as well as for the plaintiff, providing that the commission might be returned precisely in the manner in which it was returned.* The only question presented or decided in that case was, whether having by their consent led to the return of the commission in that manner, the attorneys for the defendants ought in good faith to be allowed to require the performance of a condition, a compliance with which was utterly inconsistent with the acceptance and use of their consent. The commission, as it was well known must be the case, when all these consents were given, was not to have been returned, and was not in fact returned by an agent, who could have made the affidavit prescribed by the statute, and the absence of which was the ground of objection; but in the letter-bag of an express company, whose duties were then performed on as large a scale, and with more speed and safety than those of the general post-office. The learned judge before whom that

---

* The stipulations in Dwinelle *v.* Howland (1 *Abbotts' Pr. R.*, 87), concerning the commission were as follows:—

TITLE OF THE CAUSE.

It is hereby stipulated and agreed by and between the respective parties to this action, that a commission therein may issue on the part of the said plaintiff, to be directed to J M. H., Esquire, of San Francisco, in the State of California, counsellor at law, authorizing and requiring him to examine upon oath, on interrogatories to be annexed to such commission, and in which the said defendant shall be at liberty to join T. H. H., Esquire, and H. McA., Esquire, of San Francisco, aforesaid, as witnesses on behalf of the said plaintiff; and that such commission, and the return thereto, when taken, may be transmitted either by mail, or by either of the express companies doing business between New York and San Francisco; and that the return to such commission may be directed to Richard B. Connolly, clerk of the city and county of New York, at New York city. And also that on the filing of this stipulation, an order, in pursuance of the terms thereof, may be at any time entered.

*Signed by the attorneys.*

The commission having been accordingly issued, instead of the usual order directing the method of return, the attorneys endorsed thereon the following stipulation:—

This commission, when executed, is to be returned to Richard B. Connolly, clerk of the city and county of New York, at New York city; and the same may be transmitted either by mail, or by either of the express companies doing business between New York and San Francisco.

*Signed by the attorneys.*

case was tried, did not think the defendants' attorneys were prevented by the dictates of good faith from availing themselves of the objection, and sustained it. If there was any error in that ruling, it seems to have been thought easier to avoid its consequences by the issuing of a new commission than by an appeal.

The irregularities pointed out in the present commission are undoubtedly to be disposed of upon the principle enunciated by Mr. Justice Platt in Jackson *v.* Hobby, and repeated in Dwinelle *v.* Howland.

The objection to the interrogatories, by reason of slight alterations in their form, rendered necessary by an error of the copyist in the copy served, and by the refusal of the plaintiff's attorney to furnish the original of an exhibit referred to as annexed to the interrogatories, is utterly untenable. It ought never to have been made.

The absence of the commissioner's return on the commission, on which it is required to be endorsed by statute (2 *Rev. Stats.*, 394, § 16, *subd.* 4), would undoubtedly be a good reason for not allowing the commission to be read upon the trial.* But it is not a sufficient reason for granting this motion. It may be that the court would, on a proper application, allow that defect to be supplied by returning the commission to the commissioner, in order that he might make and sign the proper return.

There is, upon the papers presented, no good reason for believing that the witness was of unsound mind when examined; and the objection to his testimony on that ground is unwarranted. But it does appear that the witness was attacked with a vertigo, or some similar affection of the head, on the first day appointed for his examination, and after four or five of the interrogatories had been answered; that his examination was then suspended by the commissioner, and resumed upon another day, when the answers previously taken were disregarded, and are omitted from the return, and a new examination was had on all the interrogatories. It may well be that if the commissioner had

---

* But in the Superior Court, where a deposition has been returned and opened, so that its contents might, with reasonable diligence, have been known to the parties before trial, objections on the trial will be limited to the competency of the witnesses, or the admissibility of their testimony (Union Bank of Sandusky *a.* Torrey, 2 *Ante*, 271, n).

fairly set forth all the facts attending the commencement and adjournment of the examination upon the record of his proceedings, which he has returned here, they might have tended to throw light upon the witness's testimony. They would at least have been of some account in judging of the credit to be given to his evidence. I think, in these matters, the proceedings as they take place should be stated and returned by the commissioner, according to the facts. Still the failure to do so would, in this case, scarcely warrant the suppression of the deposition.

But there is another singular feature presented. On the day when the examination was resumed, the witness appears with his own counsel : he holds in his hands a written paper, containing answers to all the interrogatories, direct and cross, and numbered to correspond with them, which he reads, and which are taken down, and now form the testimony returned by the commissioner. That paper was not in the witness's handwriting, and was not prepared by him; but, it may be clearly inferred from the affidavits, by his counsel, Mr. Waugh.

The witness Perry was the maker of the note in suit; and it is sought by his testimony to prove usury in its inception. His interest in the transaction is therefore such as to warrant the application of strict rules to his testimony. Mr. Waugh states in his affidavit that a long time ago a claim was made against Perry arising out of the transaction in which the note was given; that in respect to this, he (Waugh) was consulted by Perry as his counsel; and he (Waugh) thus became familiar with the facts relating to the giving of the note, and the circumstances attending the transaction aforesaid; that a day or two before the second examination, Perry called on him, and spoke of his expected examination as a witness under the commission in this case; and stated that as the transaction in question was an old matter, he would like to talk it over with Mr. Waugh, and refresh his recollection of the facts; that thereupon they sat down together in Waugh's office, and *together made a brief memorandum of the facts* which Perry supposed he would be interrogated upon. Mr. Waugh adds that, knowing Perry's liability to sudden attacks of vertigo, or rush of blood to the head, he, at Perry's request, attended the second examination of Perry under the commission, and heard the testimony given by Perry, and from his (Waugh's) " knowledge of the transactions inquired

of therein, he verily believes the said testimony to be perfectly true."

It is impossible not to see that such a practice as this might lead to the grossest abuse. It may not be so in the present case. The witness may have stated nothing but the truth. But what was wanted was *his* recollection of the transaction, not Mr. Waugh's. It does not appear that the latter had any actual knowledge of the transaction in question; or that all he communicated to, or wrote down for, the witness, was not mere hearsay. If he knew, and could testify to any material facts, he should have been named as a witness in the commission, and duly examined. But his statements, not under oath, and probably made at second-hand, should not be substituted for what the law was intended to procure, the positive, independent recollection of the witness.

It may be said, that if Perry, after these consultations with his counsel, swore positively to the matters returned by the commissioner, that should be sufficient; that he had a right thus to refresh his recollection. But if a witness, dismissed from the stand at a trial one day, on account of illness, were thus to refresh his recollection, and then return at a subsequent day with that refreshment in the form of a written statement, made by a stranger, and in a stranger's handwriting, and should offer to read that to the jury as his evidence in the case, what court would permit it? Especially if there could be no cross-examination to draw out how much of the statement was the result of the knowledge or recollection of the witness, and how much was contributed by the stranger.

I think the deposition must be suppressed, though I arrive at the conclusion with some regret, as the witness has since died; and as it is abundantly shown that neither the defendant nor his attorneys were at all concerned in the irregularities complained of. The costs of the motion, $10, to plaintiff, to abide the event of the action.*

---

* Upon appeal the order was affirmed at the general term in May, 1857, Roosevelt and Mitchell, JJ.