Breslauer vs. Geilfuss and another.  Meissner vs. Same.

BRESLAUER, Appellant, vs. GEILFUSS, Receiver, etc., and another, Interveners, Respondents.
· MEISSNER, Appellant, vs. SAME, Respondents.

| 65 | 377 |
| 74 | 384 |
| 65 | 377 |
| 84 | 456 |
| 65 | 377 |
| 87 | 530 |
| 65 | 377 |
| 89 | 72 |
| 65 | 377 |
| 101 | 192 |

*February 6 — February 23, 1886.*

DEBTOR AND CREDITOR: FRAUD.  *(1) Fraudulent judgment: Right of attaching creditor to intervene. (2) Circumstantial evidence. (3) Husband and wife: Fraudulent conveyance. (4) Securing actual debt with intent to hinder creditors.*

1. A creditor who has attached the property of his debtor, upon a writ of attachment, before judgment, may intervene for the purpose of preventing the sheriff from paying over the proceeds of a sale upon an execution against his debtor, issued upon a previous judgment which is alleged to be fraudulent and void as to the intervening attachment creditor.

2. While fraud will not be presumed it may be proved by circumstantial evidence.

3. In a contest between the husband's creditors and the wife, transactions between her and her husband will be closely scrutinized.

4. Though at the time of giving a judgment note the maker was actually indebted to the payee, a judgment entered thereon and an execution issued upon such judgment will be *held* fraudulent and void as to the creditors of the maker if the purpose of the transaction was to hinder and delay such creditors and to keep the property of the debtor for his own use and benefit.

APPEALS from the County Court of *Milwaukee* County.
The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The admitted facts in these cases are as follows:

On the 20th of August, 1884, judgment was entered in the county court of Milwaukee county in favor of the appellant *Bertha Meissner*, and against the defendant, Max Meissner, for the sum of $2,000 damages, and $32 costs, upon a judgment note bearing date August 18, 1884. A similar judgment was entered in favor of *Joseph Breslauer* upon a judgment note of the same date for the sum of $1,032.33 damages and costs. Executions were issued on these judgments on the 20th of August, 1884, and placed in the hands of the sheriff of Milwaukee county, and on the same day said sheriff levied upon all the property of said Max Meissner to satisfy said executions.

On the 21st day of August, 1884, *Geilfuss*, as receiver, etc., recovered a judgment against said Max Meissner in an action in the circuit court of Milwaukee county, for the sum of $468.89 damages and costs, and on said day execution was issued on such judgment, directed to the sheriff of said county of Milwaukee, and on the same day the sheriff levied on the same property upon which the executions in favor of the appellants had been levied. On the 21st day of August, 1884, the said *Geilfuss*, as receiver, etc., commenced an action in the county court of Milwaukee county, against the said Max Meissner, to recover the sum of $354.96, and in such action a writ of attachment was issued on the same day, and

placed in the hands of said sheriff, by virtue of which he attached and levied upon the same property taken upon said executions.

On the 30th of August, 1884, *George P. Gore* commenced an action against the said Max Meissner to recover the sum of $318.68. An attachment was duly issued in that action, and placed in the hands of the sheriff of said county, and on the same day said sheriff attached and levied upon the same property of the said Max Meissner.

Upon a traverse of the affidavits upon which the writs of attachment were issued in said last two actions, the court sustained the attachments, and on the 28th of November, 1885, judgments were entered in favor of the plaintiffs and against the defendant, Max Meissner, for the amounts claimed in said actions, with costs.

After the executions and attachments were issued on the judgments and actions brought by *Geilfuss*, receiver, etc., and *George P. Gore*, they notified the sheriff that they claimed the money which should come into his hands upon the sale of the property of said Meissner on the executions issued upon the judgments in favor of *Bertha Meissner* and *Joseph Breslauer*, on the ground that said judgments were fraudulent and void as to the creditors of said Max Meissner; and thereupon the sheriff brought the money which he had received on the said execution sale, into court, to be disposed of under the order of said court.

Thereafter, and on or about the 1st of October, 1884, the said *Geilfuss* and the said *Gore* presented to the said county court their several petitions setting forth the facts above stated as to the judgments entered against said Max Meissner in favor of the said *Bertha* and *Joseph Breslauer*, also the judgments in favor of said *Geilfuss*, receiver, as well as the actions commenced in favor of said receiver and said *Gore* in which said writs of attachment were issued and the property of said Max Meissner had been levied upon and

attached, and also setting forth that said sheriff had sold said property, and brought the proceeds of such sale into court, subject to the order of the court. The several petitions then alleged facts tending to show that said judgments were fraudulent and void as to the creditors of said Max Meissner, and charged that said judgments were collusive; that at the time said judgment notes were given, and at the time said judgments were confessed and executions issued on such judgments, the said defendant, Max Meissner, was not indebted to said *Bertha* or *Joseph* in any sum whatever; and that the judgments and executions were entered and issued for the benefit and use of the said defendant. The petitioner prayed that an issue be made by the court to determine who were entitled to the moneys realized from the sale of said property under said executions. The plaintiffs, *Bertha Meissner* and *Joseph Breslauer*, filed their several affidavits, denying all the fraudulent practices set up in said petitions, and alleging that the judgments in their favor, respectively, were for *bona fide* debts due from the said Max Meissner to them, respectively.

Upon such petitions, the affidavits of said appellants, and the records and proceedings in said actions, it was ordered by the said county court that the following issues be formed between the parties claiming to be interested in the moneys aforesaid, and the said *Bertha Meissner* and *Joseph Breslauer:* 1. Is the judgment recovered in this action fraudulent or void, as against the creditors of the defendant, Max Meissner? 2. Who of the several parties interested is or are entitled to said money? And it was further ordered that said issues be tried by a jury in the county court, according to law and the rules and practice of said court, upon testimony to be taken as provided by law, etc., and that the trial be had at the next term of said court. This order was made on the 18th of October, 1884.

The trial in the case of *Bertha Meissner v. Max Meissner*

was by jury, and but one question was submitted, viz.: "Is the judgment recovered in this action fraudulent or void as against the creditors of the defendant, Max Meissner?" The other issue was deemed one of law, rather than of fact, depending upon the determination of the issue submitted to the jury. The jury answered the question in the affirmative. This issue was tried on the 16th and 17th days of April, 1885. In the case of *Joseph Breslauer v. Max Meissner* a trial of the issues by a jury was waived, and the case was tried by the court, and on the 13th day of November, 1885, the court rendered its decision therein, finding the judgment of *Breslauer* fraudulent and void as to the creditors of Max Meissner. A final order and judgment was made by the court in both cases on the 5th of December, A. D. 1885.

The substance of the order or judgment appealed from is to the effect that the judgments and executions of *Bertha Meissner* and *Joseph Breslauer* against said Max Meissner are fraudulent and void as to the creditors of said Max Meissner, and particularly as against the creditors intervening in these cases, and that neither *Bertha Meissner* nor *Joseph Breslauer* are entitled to the moneys realized upon the sale of the defendant's (Max Meissner's) property upon the executions issued upon said judgments; and it directs that the amount of said judgments in favor of said interveners, *Geilfuss*, receiver, etc., and *Gore*, be first paid out of the moneys received by the sheriff on the sale of Max Meissner's property on the executions in favor of said *Bertha Meissner* and *Joseph Breslauer*, together with their costs in this proceeding; and that the balance of said moneys, if any, be paid, in equal shares, to the said *Bertha Meissner* and *Joseph Breslauer*. From this order and judgment separate appeals were taken to this court by *Bertha Meissner* and *Joseph Breslauer*, respectively.

For the appellants there were briefs by *E. P. Smith* and

*Nath. Pereles & Sons*, and oral argument by *Mr. Smith.* They contended, *inter alia*, that an attaching creditor is only a creditor at large before he has obtained judgment, and until that time he cannot take any steps to set aside a sale or assignment as fraudulent. *Wiggins v. Armstrong*, 2 Johns. Ch. 144; *Bentley v. Goodwin*, 15 Abb. Pr. 82; *Brooks v. Stone*, 19 How. Pr. 395; *Cropsey v. McKinney*, 30 Barb. 47; *Robinson v. Stewart*, 10 N. Y. 189; *McCartney v. Bostwick*, 31 Barb. 390; *Williams v. Tipton*, 5 Humph. 66; *Griffin v. Nitcher*, 57 Me. 270; Mitford's Equity, 115; Cooper's Eq. Pl. 149; 2 Barbour's Chancery Pr. 154; *Bigelow v. Andress*, 31 Ill. 322; *Martin v. Michael*, 23 Mo. 50; *Weil v. Lankins*, 3 Neb. 384; *Tennent v. Battey*, 18 Kan. 324; *McMinn v. Whelan*, 27 Cal. 300; *Hall v. Stryker*, 29 Barb. 105. If *Bertha Meissner* was a creditor of her husband, she had a right to deal with him as any other creditor might, and he might prefer her claim with as much justice and propriety as any other. *Hill v. Bowman*, 35 Mich. 191; *Ferguson v. Spear*, 65 Me. 277; *Haben v. Harshaw*, 49 Wis. 379–383; *Racine Basket Co. v. Konst*, 51 id. 156; *Anstedt v. Bentley*, 61 id. 629; Sackett's Inst. to Juries, 167.

For the respondents there were briefs by *Jenkins, Winkler, Fish & Smith*, and oral argument by *Mr. Fish.* They argued, among other things, that the proceeding in question is an equitable proceeding, and under the rules in equity the appellants' objection to the jurisdiction came too late. *Schwickerath v. Lohen*, 48 Wis. 601, and cases there cited. If it be conceded that Max Meissner was honestly indebted to the appellants, still the main findings, that the judgments in their favor were fraudulent and void as to creditors, may be sustained on the ground that the judgment notes upon which such judgments were entered were given with intent to hinder and delay creditors. *David v. Birchard*, 53 Wis. 494, 496; *Atwood v. Impson*, 20 N. J. Eq. 150; *Avery v. Johann*, 27 Wis. 251.

TAYLOR, J. On these appeals the learned counsel for the appellants allege as errors, (1) that the county court had no jurisdiction of these proceedings in favor of the creditors of Max Meissner who had not, at the time of presenting their petitions, obtained final judgments on their claims against the debtor, Meissner; and (2) that the finding of the jury in the case of *Bertha Meissner*, and the finding of the court in the case of *Joseph Breslauer*, are not supported by the evidence.

The first objection to the proceedings holds good as to part only of the claim of *Geilfuss*, receiver, as his petition shows that he had obtained judgment on one of his claims against Max Meissner before he presented his petition asking the court to intervene in his behalf. As to the petitioner *Gore*, no judgment had been obtained in his favor when he presented his petition. That fact appeared on the face of the petition; and, as a matter of practice, the objection should have been taken *in limine*, and made a ground of objection to awarding issues upon his petition. No such objection was taken, and apparently the issues were awarded without objection on the part of the appellants in either case. In both cases the appellants admit in their affidavits, made in reply to the petitions of *Gore* and *Geilfuss*, that the actions had been commenced and attachments issued and levied as stated in the petition. They make no issue that the claims of the petitioners are not just and of the full amount stated in their petitions, and assert the justice of their own claims and judgments, and their right to the proceeds of the sale on the executions issued thereon to the amount of their judgments. The only issues named by the allegations of the petitioners and the affidavits of the appellants are upon the question of the alleged fraudulent character of their judgments, as against the petitioners. As the final judgment in these proceedings was not entered until after final judgments had been rendered

in favor of the petitioners in the actions commenced by attachments, we should, were it necessary to support these proceedings, be inclined to hold that the appellants had waived the question of the right of the county court to entertain these proceedings, by not objecting to the award of the issues therein.   See *Peck v. School District*, 21 Wis. 517, 521;  *Van Cott v. Sup'rs Milwaukee Co.* 18 Wis. 247, 250, 251.   But as this court has decided in the case of *Nassauer v. Techner, post*, p. 388 (in which the opinion is filed at the same time as the opinion in this case), that a creditor who has attached the property of his debtor, upon a writ of attachment, before judgment, may intervene for the purpose of preventing the sheriff from paying over the proceeds of a sale upon an execution against his debtor, issued upon a previous judgment which is alleged to be fraudulent and void as to the intervening attachment creditor, it is unnecessary to discuss that question in these cases; and we refer to that opinion for the reasons for holding that the court had jurisdiction of the proceedings in these cases.

Upon the point that the verdict of the jury and the finding of the court that the judgments of *Joseph Breslauer* and *Bertha Meissner* were fraudulent and void as to the petitioning creditors are not sustained by the evidence, we cannot agree with the learned counsel for the appellants. While it is an axiom in the law that fraud will not be presumed in the absence of evidence, yet it is equally well settled that it may be proved by circumstantial evidence, as the highest crimes may be so proved.

In the case of *Joseph Breslauer* it appears to us that the facts and circumstances admitted by *Breslauer* himself are such as tend strongly to prove the fraudulent nature of his claim.   He was and is the brother-in-law of Max Meissner. He testified that the claim upon which his judgment was rendered is for money borrowed before Meissner married his sister, in December, 1881; yet he says he took no note

for it, nor made any memorandum of the amount lent to him, in any way or manner; and Max Meissner testifies that, although he kept account books at the time, in which he entered all moneys borrowed by him of any one, he does not produce the books on the trial, nor does he satisfactorily account for them.   In addition to this, Max failed in business in January, 1882, shortly after his marriage, and made an assignment for the benefit of his creditors, and in his schedule of creditors, made and sworn to at that time, he puts down *Joseph Breslauer* as his creditor for $1,500. Shortly after his failure Max compromised with his creditors for fifty cents on the dollar, and *Joseph Breslauer* agrees to the compromise with the other creditors, and signs a receipt in full for his claim for $1,500.   He and Max both testify that he was paid nothing on his claim of $1,500, and that no indorsed note was given to him, as was given to the other creditors for their claims.   *Breslauer* testifies that, shortly after the compromise, he and Max had a talk about his $1,500 claim, and he told Meissner that he would make a present to Max's wife of $500 of the claim, and the $1,000 he (Max) should pay.   No memorandum of this agreement was made by either party, and nothing more was said about it afterwards, until about the time the judgment notes were given.   Then Max came to him, and told him he could not go on any further, and thought it best to give him the judgment note for the $1,000 so as to secure him his pay, and thereupon the note was given and judgment entered thereon.

This evidence certainly does not show a state of affairs which would be likely to take place between business men, and does not satisfy the mind that there was an honest debt due from Max Meissner to *Breslauer* at the time he gave the note upon which judgment was confessed.   It leaves the case open for legitimate inferences, and we think either a court or jury might reasonably infer that the whole trans-

action was an attempt, on the part of Max and *Breslauer*, to prevent the known and honest creditors of Max from appropriating his property to the payment of their debts, and preserve the same for the use of Max Meissner. The transaction between them on the failure in 1882, when it was claimed by both that *Breslauer* was a creditor to the amount of $1,500, leads strongly to such inference. He then used his claim to assist in the compromise, as the result shows, not to get his pay on the claim, as he released his claim when the compromise was effected (if he ever had one), and permitted Max to resume possession of the property without enforcing his claim or even taking any evidence of the existence thereof. The court might well infer that the taking the note and judgment was only another attempt to keep the property for the use of Max Meissner.

The claim of *Bertha Meissner*, the wife of Max, rests upon evidence of a still more doubtful character. It is said the $2,000 for which her note and judgment were given was for money she loaned her husband in May or June, 1881, several months before her marriage. It is not claimed that she let her husband have any of this money, but that her father let him have the amount, the father to have the money returned to him out of money then deposited in the bank to her credit, which it was intended should be her marriage portion. There is proof that the father let Max have some money, at the time stated, to buy out his former partner, and that it was given to him at the request of *Bertha*, and that afterwards, in July, 1881, the father drew from the bank the money deposited to *Bertha's* credit, and retained the same. No writing of any kind was given by Max to his wife, or to the father, for this money; nor, as appears from the evidence, was there any entry made of the transaction by any of the parties. When Max failed, in January, 1882, shortly after his marriage, and when he made the assignment and a schedule of his creditors under

oath, he made no mention of the fact that his wife was his creditor for the $2,000 which it is now claimed she lent him only a few months before; and, so far as appears, she made no claim then that she was a creditor, and no claim was in fact ever made by her until Max informed her, on the day the judgment note was given for the $2,000, that he could not go on with his business further, and then proposed to give her such note to secure her the $2,000 out of his property.

In a contest between the creditors of the husband and the wife, transactions between her and her husband are to be scrutinized closely. In *Hoxie v. Price*, 31 Wis. 82, 86, this court said: " This court has held that when the wife has a separate estate she may deal with her husband, may loan him money, and take a transfer of property from him in payment thereof; and she doubtless might buy property of him when the transaction is fair and honest, and where it appears that the husband does not convey it to her merely for the purpose of covering it up and placing it beyond the reach of his creditors. But on account of the great facilities which the marriage relation affords for the commission of fraud, these transactions between husband and wife should be closely examined and scrutinized to see that they are fair and honest, and not merely contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors. This is obviously the only safe rule to be adopted when we come to examine these business transactions and transfers of property from the husband to the wife." See, also, *Horton v. Dewey*, 53 Wis. 410, 414; *Fisher v. Shelver*, 53 Wis. 498, 501; *Semmens v. Walters*, 55 Wis. 675, 684.

The evidence in this case, tested by the rule laid down in the above cases, does not so clearly establish the good faith and *bona fides* of the transaction between Max Meissner and his wife, *Bertha*, as would justify this court in setting

aside the finding of the jury, approved by the learned county judge, that the note and judgment thereon in favor of *Bertha Meissner* is fraudulent and void as to the creditors of her husband.

If it should be admitted that there is sufficient evidence in both cases to show an actual indebtedness of Max Meissner to *Joseph Breslauer* and *Bertha*, his wife, at the time he gave the notes upon which the judgments were entered, still we think the findings might be sustained on the ground that they were given for the purpose of hindering and delaying the other creditors, and keeping the property for the use and benefit of Max Meissner.

*By the Court.*— The order and judgment of the county court, appealed from in each of said cases, is affirmed, and the cases are remitted for further proceedings.