## SEMMENS VS. WALTERS.

55 675
56 LRA 842n

*October 14 — October 31, 1882.*

DEPOSITIONS. *(1) Return for correction. (2) Commission: to whom issued. (3) Consuls of U. S. (4) Irregularities, when disregarded. (5, 7) Suppression: discretion. (6) Residence of witnesses, how stated. (8) Immaterial error in admission of evidence.*

SUPREME COURT. *(9) On appeal, considers nothing outside of record: Certificate of trial judge.*

MARRIED WOMAN: FRAUD. *(10) Burden of proof: Conveyance from husband.*

1. A deposition may be returned to the commissioner for correction by signing his name as commissioner instead of with his official title.
2. It is suggested, but not decided, that the statute contemplates the issue of commissions to unofficial persons not otherwise authorized to take depositions, and only to persons in another state or territory of the Union.
3. A consul of the United States may take depositions without a commission; and it is questionable whether, when a commission is issued to him and proper notice given, the strict rules of taking depositions by commissioners should be applied.
4. Defects and irregularities in taking depositions, and in the examination of witnesses thereon, will be disregarded if they are merely formal, and do not affect the rights of the parties.
5. It is a matter of discretion to admit or suppress depositions taken under a commission, even where there has been an irregularity in examination of witnesses.
6. If the residences of the witnesses are stated in the notice accompanying the interrogatories, though not in the caption to such interrogatories, it is a substantial compliance with the statute. R. S., sec. 4114.
7. A deposition will not be suppressed because the last interrogatory was not answered, where it appears that the opposite party could not be prejudiced by such omission.
8. Where a party in her deposition testifies particularly to a fact, the admission in evidence of letters referred to in the deposition, and made a part thereof, as explanatory of her testimony, is *held*, if error, to be immaterial.
9. No certificate of the judge who signs the bill of exceptions can give this court a right to consider the reporter's notes, or anything else outside of the record.

10. In a contest between creditors of a husband and the wife, where the wife claims title to the property in dispute by mortgage or conveyance from her husband, the burden of proof is upon the wife to show such mortgage or conveyance, and that it was for a valuable consideration, paid by her out of her separate estate, or by some other person for her. But when these facts are clearly established, the burden of showing fraud in the mortgage or conveyance is upon the party alleging it. The general language of the opinions in some recent cases in this court *(Horton v. Dewey,* 53 Wis., 413; *Fisher v. Shelver,* id., 501), qualified and explained.

APPEAL from the Circuit Court for *Iowa* County.

Action to recover the possession of a stock of goods taken from the plaintiff's husband by the defendant, as constable, by virtue of several writs of attachment against the husband. The plaintiff claimed title to the goods under a chattel mortgage thereof from her husband to her. The answer justified the taking under the writs, alleging that the husband was the owner of the goods, and that the conveyance to the plaintiff was made with intent to hinder and defraud the husband's creditors.

Before the trial the defendant moved, in writing, to suppress the deposition of one Osler for the reasons that the residence of the witness was not given in the caption to the interrogatories to be propounded to him, and that the deposition was not signed by the commissioner as such. He also moved to suppress the deposition of the plaintiff, for the same reasons, and because, also, the last interrogatory to be propounded to her was not so propounded and was not answered by her, and because her answer to such interrogatory was not returned by the commissioner. The depositions referred to were taken by Francis Leland, at Hamilton, Ontario, by virtue of a commission duly issued, at the instance of the plaintiff, upon written interrogatories, the last interrogatory being: "State if you know of anything which would be material to either party to have inserted in this deposition. If so, answer fully as if thereunto specially in-

terrogated." The defendant did not join in any manner in the execution of the commission, nor propound cross interrogatories to either of the witnesses. When the depositions were first returned they were signed and certified to by " F. Leland, U. S. Consul." Afterwards, and before the motion to suppress was made, they were, by order of the court, returned to the commissioner for correction, and were then signed by him as commissioner. The motion to suppress the depositions was denied; it was renewed, orally, when the case was called for trial, and was again denied.

The deposition of the plaintiff was to the effect that the chattel mortgage under which she claimed the goods in question was given to her to secure money loaned to her husband from her separate estate; and that such money came to her from her mother and uncle in England. Accompanying the deposition and referred to therein, as exhibits, were a number of letters written to her by attorneys in England, relating to remittances by them to her; also a letter to her husband from attorneys in Ontario, stating that a draft was enclosed, for $913.80, payable to the order of the plaintiff. These letters were received in evidence, against the defendant's objection. It also appeared by the testimony of the cashier of a bank in which the plaintiff's husband had deposits, that, a few days after the date of the letter last mentioned, a draft for $913.80 payable to the order of the attorneys in Ontario, and by their indorsement made payable to the order of the plaintiff, and by her indorsed in blank, was deposited to the credit of the husband in said bank. Other facts appear from the opinion.

The following statement and explanation are contained in the printed case: " Plaintiff's counsel, in opening the case to the jury, commenced calling their attention to certain papers, when he was interrupted by defendant's counsel, who said: ' We object to counsel showing the jury papers in his opening argument before they are offered in evidence.' The

court said to plaintiff's counsel, ' Go on; ' and defendant, by his counsel, then and there excepted to such direction of the court. Plaintiff's counsel then continued calling the attention of the jury to certain papers that were not portions of the records and had not been offered in evidence, and read portions of the same to the jury. (The foregoing . . . was contained in the proposed bill of exceptions offered by defendants. On motion of plaintiff's counsel, upon the settlement of the bill of exceptions, the same was stricken out by the court, and on further motion of the plaintiff's attorneys, the judge in his certificate settling the bill of exceptions in said cause directed, ' that the official reporter's notes as certified by him shall be attached to the bill of exceptions; that in case said reporter's notes contain anything not embodied in the bill of exceptions, either party may use the said reporter's notes on the argument in the supreme court.' The aforesaid . . . actually occurred upon the trial, as will appear from the reporter's notes.)"

The following instruction to the jury was asked by the defendant: " While a wife may loan her husband money, and take a transfer of property from him in payment thereof, where the transaction is fair and honest, and where it appears that the husband does not convey it to her merely for the purpose of covering it up and placing it beyond the reach of his creditors, still, on account of the facilities which the marriage relation affords for the commission of fraud, these transactions between husband and wife should be closely examined and scrutinized, to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors." The court gave the instruction after adding thereto: " But this does not mean that a married woman may not hold a valid chattel mortgage when the husband owes others. If the transaction is fair and honest, and to secure an honest debt, she will be as carefully protected as

the parish priest or the village lawyer." The defendant also asked the following instruction: " A sale by chattel mortgage or otherwise, in making which the object of the debtor is to hinder, delay, or in any way put off his creditors, is void if made to one having knowledge of such intent, and this knowledge need not be actual, positive information or notice, but will be inferred from the knowledge by the purchaser of facts and circumstances sufficient to raise such suspicions as should put him on inquiry." This instruction was given with the following addition by the court: " But this does not mean that a creditor may not take security for an honest debt, even though . he knows that the creditor [debtor] is indebted to others, and that his obtaining preference over others will operate to hinder and delay other creditors, and knows that the creditor [debtor] prefers to secure him before others. A creditor [debtor] of several has a right to pay one although unable to pay the others, and has a right to secure one when unable to secure the others. Fraud will not be inferred when it is shown that the transaction was to pay or to secure an honest existing indebtedness, from the mere fact that the creditor who is paid, or secured, knew that others had claims against the debtor."

The court also instructed the jury as follows: " A married woman may lawfully take a chattel mortgage from her husband to secure an actual debt due her from him growing out of her loaning him money that she received from her relatives. It is claimed in this case that the mortgage under which plaintiff claims the property was fraudulent as to the creditors of her husband. That claim being set up by the defendant, to entitle the plaintiff to recover she must prove that the mortgage upon which she relies was given in good faith, and to secure an actual indebtedness. If you are satisfied that her husband owed her the money, and gave this mortgage to secure it, she is entitled to the property, and entitled

to recover in this action, unless the defendant has proved that the mortgage was executed to hinder and delay creditors, notwithstanding the debt. Taking a chattel mortgage to secure one's own debt is not void because the mortgagee knows that the mortgagor owes others, and knows that the effect will be to secure his, the mortgagee's, debt, in preference to others. It is the policy of the law to protect the rights of married women. Nothing is more natural than that the wife should desire to help her husband in his business. If she actually lets her husband have money to use in his business it is right and proper that she should take security for it. If she takes a chattel mortgage in good faith, and files it with the proper officer, the property becomes hers to take possession of if found in the hands of any one, whenever she deems herself insecure."

There was a verdict for the plaintiff; a motion for a new trial was denied; and from a judgment on the verdict, the defendant appealed.

For the appellant there was a brief by *Reese & Carter* and *Briggs & Jenks*, and oral argument by *Mr. Richard Carter* and *Mr. Briggs*. To the point that in taking the deposition of a witness out of the state on commission, the statute and the rules of court applicable thereto must be strictly complied with, they cited, 1 Greenl. on Ev. (4th. ed.), secs. 320, 323; *Lightfoot v. Cole*, 1 Wis., 40; *Baxter v. Payne*, 1 Pin., 504; *Goodhue v. Grant*, id., 557; Rules 59, 61, Old Circuit Court Rules, Tay. Stats., 2022; R. S., sec. 4114. They also argued that the court erred in its instructions to the jury, citing, *Atwood v. Impson*, 20 N. J. Eq., 150; *Avery v. Johann*, 27 Wis., 251; *David v. Birchard*, 53 id., 496; *Hoxie v. Price*, 31 id., 86; *Fisher v. Shelver*, 53 id., 501; *Horton v. Dewey*, id., 413.

For the respondent there was a brief by *Lanyon & Spensley* and *O. C. Smith*, and oral argument by *Mr. Spensley*.

ORTON, J.   1.  The depositions were returned to the commissioner in Canada for correction by signing his name as a commissioner instead of consul of the United States.  This was not error.  2 Wait's Pr., 707; *Keeler v. Vanderpool*, 1 Code R. (N. S.), 289; *Creamer v. Jackson*, 4 Abb. Pr., 413.  It is suggested, but not decided, that the statute authorizing commissions, contemplates their issue to unofficial persons not otherwise authorized to take depositions, and the issue of commissions only to persons in another state or territory of the Union.  Consuls of the United States are authorized to take depositions without a commission, and a commission is needless.  2 R. S. of U. S. (2d ed.), § 1750; *Herman v. Herman*, 4 Wash. C. C., 555.  And it is questionable whether the strict rules of taking depositions by commissioners ought to be applied in such a case, where the proper notice, as in this case, was given of the examination of certain witnesses whose residence is given in the notice before a consul of the United States in one of the provinces of Canada, and the time and place are also given in the notice.

2.  The residences of the witnesses were not stated in the caption of the interrogatories, but were stated in the notice accompanying them, or a copy of them.  This was certainly a substantial compliance with the statute.  Sec. 4114, R. S. Defects and irregularities in taking depositions, and in the examination of witnesses thereon, will be disregarded if they are merely formal, and do not affect the rights of the parties. *Hewlett v. Wood*, 67 N. Y., 394; *Forrest v. Kissam*, 7 Hill, 463; *Rust v. Eckler*, 41 N. Y., 488; *Kimball v. Davis*, 19 Wend., 437.  And it is a matter of discretion to admit or suppress depositions taken under a commission, even where there has been an irregularity in examination of witnesses. *Wanzer v. Hardy*, 4 Wis., 229.

3.  The last general interrogatory was not answered.  The strict rule laid down by some authorities, that if this last interrogatory is not answered the deposition will *in general*

be suppressed, as in *Kimball v. Davis, supra*, must rest upon the other rule that it must appear that by such an omission the opposite party might have been prejudiced. It is doubtful if there is no appearance on the other side, and no cross interrogatories, whether the opposite party can complain of the omission. The reason given for the strict rule is that unless this last general interrogatory is answered, it is impossible to say that the witness has told the whole truth. Where it is clearly apparent, as in this case, that the witness could not have testified to anything further unless to contradict her evidence in answer to the specific interrogatories, which certainly is not to be presumed, the omission was harmless. The witness was the party plaintiff, and it is not probable she would have testified to anything favorable to the other side, and especially in contradiction of her other testimony.

The testimony of the witness is so full, not only as to the general fact that the money which went into the mortgage was her separate property, but also as to the minute particulars of the manner in which she acquired it, that we may well say that the general interrogatory had already been fully answered; and that is sufficient. *Fassin v. Hubbard*, 55 N. Y., 471. If the deposition had been suppressed for any cause, there was still evidence in this case of the separate property of the plaintiff in the testimony of Thomas Parmelee, the cashier of the bank, and the draft of $913.80, which was made payable to her by indorsement. But, we think, the depositions were properly allowed.

4. The correspondence with divers persons in England, referred to in the deposition and made a part thereof, as original or positive evidence perhaps was not admissible, and the circuit court did not admit it on that ground, but only as explanatory of the testimony of the plaintiff that the money was hers. These letters are given to show how she came by it, and this was not necessary or strictly proper, except on

cross examination. The fact that the money was hers was the only material one, and this she testified to positively, and the letters were merely in explanation or corroboration of her testimony relating to this fact. It is by no means sure that the letters were not admissible as a part of her deposition. They were called for by the interrogatories, without objection or cross interrogatories. But it is sufficient that the testimony of the plaintiff made a *prima facie* case without the correspondence, and the verdict should and probably would have been the same if they had been rejected.

5. What took place on the opening of the plaintiff's case to the jury by her counsel is not preserved in the bill of exceptions, and the certificate of the judge who signed the bill of exceptions can give this court no right to consider anything outside of the record. The record must consist of that which is record without it, and that which is made a part of it by a bill of exceptions. We do not think we have a right to consider the reporter's notes or any fact therein, although the certificate of . the learned judge gives us leave to do so when such notes are not made a part of the bill of exceptions.

6. The learned counsel of the appellant seems not to understand or to misapprehend the general language of the opinions in some late cases in this court, and to infer that the general rule which places the burthen of. showing fraud upon the party alleging it has been reversed in such cases.

The general language of the opinions, which is also used in the instructions asked, must be construed and understood in connection with that used in other cases, where it is clear and explicit, touching the precise questions raised. When these opinions speak about the *onus* of showing the *bona fides* or good faith of her purchase from her husband being cast upon the wife, reference is had to the question of the consideration as her separate property, upon which the presumption of the law is against her. These facts clearly

established by her, the question of whether the conveyance or mortgage from her husband was taken in good faith, or with the intent to defraud, rests upon the same general principle as between other parties, and the burthen of showing the fraud is upon the party alleging it.

The *onus* of proving the fraud being thus upon the party attacking the conveyance or mortgage on that ground, and the *onus* of showing that the consideration thereof arose from some other source than her husband, and consisted of her separate estate being cast upon her, then the principle laid down in *Hoxie v. Price*, 31 Wis., 82, that, on account of their peculiar relationship, "the transactions should be closely examined and scrutinized to see that they are fair and honest," may have full force. To illustrate, the language of the statute in respect to cases where the defendant is an officer alleging fraud in the mortgage by which the plaintiff claims the property levied on or attached, sec. 2319, R. S., is, "then the burden of proof shall be upon the plaintiff to show that such mortgage was given *in good faith*, and to secure an actual indebtedness and the amount thereof." In respect to this statute Mr. Justice Taylor says, in *James v. Duyn*, 45 Wis., 512: "We do not think the statute was intended to put upon the plaintiff the burden of proof throughout the whole case, and compel him to prove affirmatively that his mortgage was not in fact fraudulent and void as to creditors. Where the mortgagee has proved that the mortgage was given to secure an actual indebtedness and the amount thereof, he has in fact established *prima facie* that it was given in good faith, unless there be something on the face of the mortgage which shows it to be fraudulent." So, wherever general language is used in any opinion, which associates good faith or *bona fides* with the fact of consideration or separate property, as the burden of proof which is thrown upon the wife, proof of her separate property, and that it constituted the consideration of the conveyance or mort-

gage, is proof of the good faith and *bona fides* used in this sense.

With this understanding of the language of the instructions asked, it was proper to give them, and it was also proper for the court to give the jury further or additional instructions, which would embrace more fully the whole law upon the subject. The instructions were not changed or modified so much as extended and explained, and there appears to be no error in such additional instructions, viewed in this light.

*By the Court.*— The judgment of the circuit court is affirmed.