### WYNNE, LOVE & CO. ET AL. *v.* W. O. MASON ET AL.

1. REGISTRATION OF DEEDS. *Actual fraud. Estoppel.*

    Registry laws cannot be invoked to shield actual fraud; hence the holder of a recorded title may, by his conduct inconsistent therewith, be estopped to assert it against one who has been misled by him, to his prejudice. *Staten* v. *Bryant,* 55 Miss., 261.

2. FRAUDULENT CONVEYANCE. *Dealing with insolvent debtor. Actual intent to defraud.*

    Where one, for the purpose of obtaining means to develop and improve his wild land, voluntarily conveys it to his wife, leaving himself insolvent, and opens near it a small store in his own name, buying goods on credit and furnishing therefrom all the supplies and money needed to clear and improve the land, this being with the acquiescence of the wife, the conveyance, though executed and recorded, is fraudulent and void as to subsequent mercantile creditors having no actual knowledge thereof.

3. INJUNCTION. *Sale under trust-deed. Damages. Attorney's fee. Code 1892, § 572.*

    On dissolution of an injunction to stay a sale under a trust-deed, damages are regulated solely by § 572, code 1892; and, where a sale is not threatened, and by the terms of the trust-deed cannot be made for two years, it is error to allow an attorney's fee as damages, no delay or actual damage having resulted from the injunction. *Williams* v. *Bank,* 71 Miss., 858.

4. DEED. *Consideration. Voluntary promise.*

    A deed from a husband to his wife cannot be supported as on a valuable consideration, where it rests solely upon a previous voluntary promise to give her at some time a sum of money.

FROM the chancery court of Tunica county.

HON. W. R. TRIGG, Chancellor.

Appellants, Wynne, Love & Co. and B. Lowenstein & Bros., judgment creditors of W. O. Mason and another, filed this bill to cancel as fraudulent a deed by W. O. Mason to his wife of

a certain plantation for life, and also two trust-deeds thereon, executed by Mason and wife, one to the Colonial & United States Mortgage Company, and the other to Mrs. B. T. Gray. The bill sought to subject the land to complainant's judgments. The attack upon the trust-deed in favor of the Colonial & United States Mortgage Company was abandoned by complainants, and that branch of the controversy is eliminated.

The trust-deed in favor of Mrs. Gray was attacked mainly upon the ground that the debt secured was fictitious. As the case against Mrs. Gray involves only issues of fact, it is not deemed necessary to set out the evidence as to this.

Touching the case as against Mrs. Mason, the material facts, as found by the court from the record, and its conclusions therefrom, are stated in the opinion. The court below held the trust-deed to Mrs. Gray and the conveyance to Mrs. Mason valid, and dismissed the bill, at the same time dissolving the injunction which complainants had obtained against the sale by Odom, trustee, under the trust-deed in favor of Mrs. Gray, and awarding the sum of $150 attorney's fee as damages in her favor. From this decree complainants appeal.

*N. L. Marmon*, for appellants.

There are many facts from which we may conclusively presume fraud in the deed from Mason to his wife. He retained possession and held the land out to the world as his own, and was enabled to obtain credit by reason of his apparent ownership. The proof leaves no doubt that credit was extended to Mason upon the faith of his individual ownership of the land. It is true the deed to his wife was on record, and that is constructive notice to the world; but one cannot claim absolution from actual fraud because of that fact. A creditor in extending credit may rely upon the honesty and good faith of the debtor, and may assume, without inquiry, the debtor has made no fraudulent conveyance of his property, and the debtor cannot be heard to say that his creditors might have learned by

searching the records that he intended to defraud them.    7 Fed. Rep., 670; 7 Cold., 364; 49 N. H., 100.    The law will not permit a person to hazard the interest of his creditors as Mason did here.    Bump on Fr. Con., 316.    A person about to engage in a new business may not, with a view thereto and for the purpose of securing property to his family or himself, in the event of loss occurring in the business, convey his property to his wife without due consideration.    Such conveyance is void as to subsequent creditors.    34 N. Y., 58; 38 *Ib.*, 68; 7 Fed. Rep., 670; 37 Penn., 438; 92 U. S., 183; 69 Mo., 631.

That extensive and valuable improvements were made on the lands immediately after the conveyance is not denied.    It is equally certain they were made by money from the store and from the proceeds of goods furnished by creditors.    Appellants were the source from which Mason derived all his supplies, and the land was the basin into which all the proceeds of the business flowed.    No conveyance upon which is fastened this fraud can stand.    Bump on Fr. Con., 316; 41 Conn., 611; 60 Barn., 317; 6 B. Monroe, 29.

Mrs. Mason could not find shelter from the fraud of her husband in her own good faith, unless it affirmatively and conclusively appears the conveyance was for a full and valuable consideration, and without any participation by her in his fraud.    Bump on Fr. Con., 115; *Comstock* v. *Rayford*, 1 Smed. & M., 423; 19 Tex., 271.    No such showing of good faith is made in favor of Mrs. Mason.    The burden of establishing the existence of the real consideration clearly rests upon the wife in the contest between her and her husband's creditors. *Hodges* v. *Hickey*, 67 Miss., 715; 53 Wis., 414; 80 Ky., 638; Wait on Fr. Con., § 301.

The conveyance to Mrs. Mason is to be regarded as a voluntary one, and so is not good as against creditors.    There was a continuous, unbroken indebtedness on the part of Mason, and the deed was therefore fraudulent as to subsequent creditors.    39 Conn., 566.

*W. V. Sullivan,* on the same side.

The case turns entirely upon questions of fact. The deed to Mrs. Mason was without valuable consideration. The intended gift of $1,000 never eventuated into an actual gift. The conveyance was evidently made in view of the business which Mason was then on the eve of entering upon, and with a full knowledge of the imposition which would fall upon creditors. Wait Fr. Con., § 100; 39 N. Y., 169. The inevitable result would be, and was, to defraud subsequent as well as present creditors. In view of his representations as to his ownership, made to creditors, Mason cannot be heard to say that the deed was on record. Nor can his wife invoke the record, since she delegated to her husband complete control over all business of hers, including this particular property. She cannot reap the benefit of her husband's agency and of the direct representations made by him, and then repudiate his acts and his agency. Bump, 239; Wait, 1826; 78 Ky., 644. The assets used to improve the place were diverted from the firm of Mason & Co., and can be followed by its creditors. Wait, §§ 26, 42; Bump, 239. Mason's fraud is clearly established. The conveyance to his wife was voluntary, and, having been made with intent to defraud future creditors, can be set aside by them.

*A. S. Buchanan,* for appellees.

The record does not show that Mason was the agent of his wife in the matter of acquiring for her the land. In that matter their rights were antagonistic and they were the contracting parties. She surrendered a debt against him of $1,600 and received a conveyance of a life interest in the land. Whether the cash consideration was $600 or $1,600 is a matter of small consequence if she chooses to give up the debt against her husband and take a life interest in the land and did give it up. Who shall say she is not entitled to the benefit of the bargain? It is not shown whether this was a full value of the life estate or not. Who can say that it was not? One who is solvent

may pay for property and have it conveyed to his wife, and, although he intended to defraud subsequent creditors, the deed is valid in her favor.   He has a right to make settlement on his wife, if free from fraud.   Bump Fr. Con., 158; *Wilson* v. *Kohlheim*, 46 Miss., 346; *Savage* v. *Dowd*, 54 Miss., 728.

Creditors, who may set aside a voluntary conveyance, must be such at the date of the conveyance.   *Pennington* v. *Seal*, 49 Miss., 518; *Simmons* v. *Ingram*, 60 *Ib.*, 886; *Carberry* v. *Burns*, 68 *Ib.*, 573.   Subsequent creditors cannot attack a voluntary conveyance except on the ground that it was made to defraud them.   Code 1880, § 1294; Code 1892, § 4228.   Registration of deeds is equivalent to livery of seizin, and imparts notice to the world.   *Loughridge* v. *Bowland*, 52 Miss., 546. The deed being on record, complainants cannot predicate fraud on Mason's representations in conflict therewith.   *Prestidge* v. *Cooper*, 54 Miss., 74; *Hilliard* v. *Cagle*, 46 *Ib.*, 309; *Simmons* v. *Ingram*, *supra*.   Where it does not impair the claims of existing creditors, a husband may settle any part of his property on his wife.   101 U. S., 223; 10 Pet., 583.   One about to engage in business, and who devotes adequate means to it in good faith, may settle the rest of his property on another, and unlooked for disasters will not affect the validity of the settlement as to subsequent creditors.   97 U. S., 304.   In all cases where the courts have held deeds fraudulent because the person conveyed his property to another and embarked in business, there has been a withholding of the deed from record. 34 N. Y., 508.

On the subject of what constitutes fraud in a conveyance, see *Hirsh* v. *Richardson*, 65 Miss., 227; *Murphy* v. *Jackson*, 69 *Ib.*, 403; *Lumber Co.* v. *Cain*, 70 *Ib.*, 628; *Richardson* v. *Davis*, *Ib.*, 219; *McAllister* v. *Honea*, 71 *Ib.*, 256.

Argued orally by *N. L. Marmon* and *W. V. Sullivan*, for appellants, and *A. S. Buchanan*, for appellees.

J. B. HARRIS, Special J., delivered the opinion of the court.

1. As the attack on the mortgage to the Colonial Loan Company was formally abandoned in the court below, it will not be necessary to go further into that branch of the case.

2. As to the mortgage to Mrs. Gray, we think the finding of the chancellor on the facts should be sustained.   There is no doubt that this mortgage was given to secure a *bona fide* debt. Mason and his wife had a perfect right to secure it by mortgaging the property.   We think Mrs. Gray has sufficiently explained the statement made by her in her cross-examination that the deed had been recorded before it was delivered.   And as the equity of redemption was subject to sale under execution by creditors, it could not be said that the mortgage had the effect of hindering or delaying the matter.

3. The deed made by W. O. Mason to his wife must be set aside as fraudulent and void as to the complainants.   It is impossible to reach any other conclusion from the facts disclosed by the record than that the purpose of Mason in conveying this property to his wife was but a part of the scheme devised by him to develop the land in controversy at the expense of creditors.   He had gone out of the mercantile business, as the record shows, some time before he purchased this land.   He purchased it for $6,500 in cash, in a wild state, less than a year before he opened the business of Mason & Co., and had begun to develop it.   To do this successfully required large expenditures of money, and the result of the venture was in the highest degree uncertain.   It was necessary to clear the land, to put houses on it for tenants, and the first years of such a venture were hazardous, meaning all outlay and no income.   He did not wish to incumber the land itself, so he concluded to convey it to his wife, and thus place it, as he supposed, beyond the reach of those at whose expense he intended to improve it.   He put the title to the land in the name of his wife.   The deed was placed upon record, and he immediately opened a small store near it, from the very outset buying everything on credit, and

supplying from the store the tenants upon the land while they were engaged in the work of clearing, fencing and digging wells, and paying out from the store money to carpenters and others who were employed by him to improve the land.  So far as the record shows, almost the only customers of this store were tenants on the land.  If there were any others it does not appear.  But, whether there were or not, whatever money came into the store was paid out by Mason for improvements upon the property.  The store was a mere incident.  The main purpose was the development of the land.  The actual results show this to be true, and Mason's own declarations, so far as they are shown in the record, also show that this was his purpose. Mr. Robinson, his ostensible partner and book-keeper, states that such was the fact, and that when he complained to Mason that everything was going from the store into the place, Mason replied: "Ah, well, I will get the place into fine condition and will then make you manager of it."

It is true Mason's deed to his wife was recorded.  This was done only a day or two before the business of Mason & Company was opened.  It is also true, however, that the deed was virtually a voluntary conveyance.  The money consideration expressed ($1,600) was made up of two items, one being $1,000, arising from the sale of property which belonged to the husband, and the balance being $400 and interest, which is alleged to have come to Mrs. Mason from her mother upon her marriage.

As to the $1,000, the court cannot consider this as sufficient to support the deed.  Aside from the restrictions which the statute puts upon transactions between husband and wife, it has been repeatedly held, and, we think, most justly, that a husband cannot, by simply declaring himself a debtor to his wife, convey to her his property upon that consideration at the expense of his creditors prior or subsequent.  The husband has a right to pay his wife a *bona fide* debt, to convey her property, or to be her debtor, and convey property in the satisfaction of

the debt, but he cannot support a deed as being upon a valuable consideration which rests upon his mere voluntary promise that he would at some time give her a sum of money. A conveyance made to the wife, the consideration of which is property owned by the husband, is voluntary. 58 Iowa, 115; 59 Ind., 343; 80 Kentucky, 129; *Ib.*, 638.

As to the $600, we are of opinion that it does not stand in a much better light. The length of time that Mason had used the money, together with the circumstances surrounding the case—the very atmosphere of the case, so to speak—force us to the conclusion that this, like the $1,000, was an afterthought, and trumped up to meet the emergency of the occasion. But, even conceding that Mason did owe his wife this $400 and interest, it was wholly inadequate to support the conveyance of real estate worth $6,500.

It is earnestly insisted by counsel for the appellees that, as the creditors who are assailing this conveyance are subsequent creditors, and that, as the deed was recorded, they had notice of it, and consequently they cannot claim to have been defrauded. But whatever may be the effect, ordinarily, of the recording of a deed, as constructive notice, it was not intended that the registry laws should constitute a shield for actual fraud. It has been held in this state in a well-considered case that the holder of a recorded title may, by conduct inconsistent with such title, be estopped from asserting that title as against a party who has been misled by his conduct. *Staten* v. *Bryant*, 55 Miss., 261.

All the authorities agree in holding that a voluntary conveyance is presumptively void as to existing creditors, and the burden of proof is on the party making the conveyance to support it. The authorities are equally unanimous that a voluntary conveyance can be set aside by subsequent creditors if made with the intent to defraud them, the only difference being that, as to the subsequent creditors, the burden of proof is on them to show that the conveyance was made for the pur-

pose of defrauding them. The result is the same in either case, and the question is one of the burden of proof.

While it is true it has been held that a man who is not in debt can convey all his property to his wife, and the conveyance be upheld as against subsequent creditors, although they may give credit upon the faith of the particular property, it will be found that the cases which support this proposition depend upon the particular facts of each case. In the case at bar, the truth is that Mason not only conveyed all his property to his wife, but he did it for the purpose of placing it beyond the reach of prospective creditors, at whose expense he intended to develop and improve the very property conveyed. It is not the case of a man who conveys his property and embarks in an independent business which has no reference to the property conveyed; but this is a case in which the very purpose of the conveyance was to improve the very property conveyed at the expense of the grantor's prospective creditors, and he did so improve it; and if there was nothing else in the case than this, we think it is well settled that one cannot hold an interest obtained through the fraud of another any more than if the fraud was committed by himself. See *Lawrence* v. *Hand*, 23 Miss., 103; *Powers* v. *Johnson*, 10 Smed. & M., 169; 3 Iredell's Eq., 219.

We think it has been abundantly settled that the mere recording of a deed is no protection from actual fraud. *Staten* v. *Bryant*, *supra; Murphy* v. *Jackson*, 69 Miss., 403; 60 Ala., 192; 38 *Ib.*, 115; 52 Ga., 183.

We think the proof in this case not only shows actual fraud on the part of Mason himself, but we are warranted in concluding that Mrs. Mason herself participated in the scheme which Mason undertook to carry out. While our recent statutes have to some extent modified the legal relations between husband and wife in freeing the wife from some of her common law disabilities, yet the statutes have not undertaken, nor have they in fact affected the actual relation existing between husband and wife,

and it is this actual relation which is the basis of the salutary rule that transactions of this character between husband and wife must be viewed with suspicion, and their fairness clearly established.

It is true that Mrs. Mason denied that she knew anything of the purpose of her husband, but she certainly did know that the land which she claims was brought into value through the business of Mason & Co. She knew that she had no money and that her husband had none, and that these improvements were being made at the expense of some one.

But Mrs. Mason's statements cannot be taken, we think, as amounting to very much, as she has been very clearly discredited as a witness in this case. If she did not actively participate in the fraud, she was a very willing and passive instrument in its perpetration, and we think, as to these creditors, under all the circumstances in the case, it would be highly inequitable to allow her to reap the benefit of her husband's fraud. We, therefore, conclude that, subject to the prior incumbrances of Mrs. Gray and the Colonial Loan Company, the land must be sold to pay the complainants' debts and interest. The proof is that the property is amply sufficient to pay all the debts, and to leave Mrs. Mason and her husband a large surplus. Mrs. Mason herself has gotten from the property more than $400— if she, in fact, parted with that sum. She states herself that the money obtained from the Colonial Loan Company was placed to her individual credit in the banks in Memphis, and used by her—at least half of it. Therefore, on this branch of the case, the decree of the chancellor must be reversed, and the decree will be rendered here in favor of the appellants for the amount of their debts and interest.

But the decree must also be reversed on another ground. On the dissolution of the injunction against Mrs. Gray and Odom, trustee in her mortgage, the chancellor awarded $150 attorney's fee. This was error. No damages were allowable in this case unless they were allowable under § 572, code 1892,

which provides for five per cent. damages on the dissolution of injunctions to stay sales under deeds of trust or mortgages with power of sale. They were not allowable under this section because the injunction was wholly inoperative, because no sale was threatened, as the debt was not due, and by the very terms of the deed of trust no sale could be made until 1896. The defendants, therefore, were not in any way affected by the injunction. They were not delayed and not damaged, and no attorney's fee should have been allowed. *Williams* v. *Bank,* 71 Miss., 858.

*The decree of the lower court, in so far as it dismisses the complainant's bill as to the Colonial & United States Mortgage Company, Limited, and Mrs. B. T. Gray and J. W. Odom, trustee, is hereby affirmed, and as to all other matters it is reversed, and a decree will be entered here in favor of complainants for the amount of their judgments, and ordering a sale of the land, subject to the prior incumbrances above referred to, for satisfaction thereof.*