SOMMERMEYER, Respondent, vs. SCHWARTZ, Intervener, Appellant.

*November 14 — December 11, 1894.*

(1) *Judgment: Record silent as to service: Presumption.* (2, 3) *Debtor and creditor: Fraudulent conveyance: Husband and wife: Attachment.*

1. In attachment proceedings the judgment roll in the principal action is competent evidence of the plaintiff's claim, although it fails to show service of a summons. The record being silent, the presumption is in favor of the judgment that lawful process was duly served.
2. A settlement upon a wife of substantially all the husband's property, made soon after he had entered into a copartnership for a new enterprise, and intended as a provision against the contingency of ill success in such enterprise, is void as against subsequent creditors of the firm.
3. A conveyance of property of large value by a husband to his wife to whom he owed a small amount being fraudulent as to creditors of the husband's firm, an attachment of the firm property to sat-

isfy a claim of the wife for moneys loaned to the firm out of the proceeds of the property so conveyed to her will not be sustained, as against other firm creditors, even for the amount of the husband's original debt to her.

APPEAL from a judgment of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Reversed.*

The defendants, Charles W. E. Sommermeyer, Lena Brimi, and Anna Huebner, were copartners, doing business under the firm name and style "Boston One Price Clothing House." The plaintiff was the wife of the defendant Sommermeyer. The appellant, *Caroline Schwartz*, was an intervening attaching creditor. The defendant firm became insolvent and failed, owing many and considerable debts, amounting to a large sum over and above the value of their assets. The plaintiff's action is founded upon an account for moneys loaned to the firm, amounting to $7,611.80. The entire stock of goods of the firm was attached in her action. The defendant *Schwartz* subsequently attached the same goods for a debt due her from the firm. She afterwards petitioned the court for leave to intervene and defend against the plaintiff's attachment, and to have it set aside as founded upon a fictitious and collusive claim and a fraud upon her rights. Other subsequently attaching creditors intervened. The court awarded issues for trial: (1) Did the plaintiff have a valid claim against the defendants, and, if so, for how much? (2) Was the plaintiff's action fraudulent or void as to creditors? (3) Who is entitled to the proceeds of the sale of the attached property?

There was a trial by the court without a jury, and a finding, in substance, that (1) the plaintiff's claim was valid and due at the time of the attachment; (2) that the action was not fraudulent or void as to creditors; (3) that the plaintiff was entitled to the fund realized from the sale of the attached goods, except as against the claim of Louis Shakman for $7,095.95; (4) that none of the allegations of fraud or

collusion were true; (5) that the conveyances made by the defendant Sommermeyer to his wife, the plaintiff, were made in good faith, when he was not insolvent, and not in contemplation of insolvency nor to defraud his creditors. The attached property was sold for $8,280, which was paid into court to be applied under its order. There are two other attachments which are prior in time to the appellant's. These are Louis Shakman's for $7,095.95, and the plaintiff's, for $7,611.80. The appellant's claim is for $953. The issues raised by all intervening creditors are embraced in one trial. All the intervening petitions were dismissed upon the merits. The appellant filed exceptions to the findings, and appealed.

The plaintiff, to establish her claim, introduced in evidence the judgment roll in her action. The roll contained no proof of the service of a summons. The court ruled that the burden of proof on the question of the validity and amount of the plaintiff's claim was on the defendant, and the case was tried in accordance with that ruling. It appeared by the evidence that, at the time when Sommermeyer entered into the copartnership, he undertook to furnish the principal part of the capital of the firm — "from $10,000 to $20,000." He had not the money, but he owned real estate of considerable value, situated in Wisconsin, Minnesota, and Dakota. So, instead of putting in money, he provided a line of credit for the firm with one wholesale dealer, by giving a mortgage on his real estate for $10,000. This was to secure Louis Shakman for such goods as he should sell to the firm. This mortgage was made June 10, 1890. On June 16, 1890, Sommermeyer conveyed all his real estate, subject to this mortgage to Shakman, to one Rathjen, for a nominal consideration, and for the purpose of having Rathjen convey it to his wife. October 23, 1890, Rathjen conveyed to the wife without consideration. This seems to have been substantially all the property Sommermeyer then owned. Sommermeyer claims that this transfer

of the title to the lands to his wife was to repay her for moneys which she had loaned to him, and to provide for her and the family against adverse results of his speculations. The loans from his wife are not very clearly shown or traced. But it appears that she received a small sum (she says $400) from her father's estate in 1878; that she gave or loaned this to her husband to use in his business; that she kept no account of it; that everything was trusted to her husband, who says that he kept an account of his dealings with her, which does not seem to have been produced. He owed no other debts at the time of the conveyance to her. Some of the lands conveyed to her were sold, and Sommermeyer applied the proceeds of such sales to the business of the firm, and to the payment of its debts. These moneys constitute her claim against the firm. His wife says he managed all her business and rendered no account to her. The other partners did not understand that they were indebted to *Mrs. Sommermeyer* for these moneys paid in by Sommermeyer, but supposed that they were a part of the capital which he had agreed to furnish. They did not understand that it created a debt against the firm. And the money so paid in, in all about $7,000, was all of the $10,000 to $20,000 of capital which he ever paid in. Sommermeyer is insolvent.

The appellant proved her claim against the defendant firm by a judgment against them. Her claim was later in its origin than the date of the conveyance of Sommermeyer to his wife. It does not appear that she had knowledge of such conveyance.

For the appellant there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*. To the point that, the plaintiff's claim being largely fictitious and intended to defeat just claims of other creditors, her attachment is void *in toto*, they cited *Freiberg v. Freiberg*, 74 Tex. 122; *Fairfield v. Baldwin*, 12 Pick. 397; *Page v. Jewett*, 46 N. H. 445; *Hale v. Chandler*, 3 Mich. 540; *Davis v. Eppinger*, 18 Cal.

379; *Gibbons v. Bressler,* 61 Ill. 110; *Johnson v. Heidenheimer,* 65 Tex. 263; Drake, Attachm. §§ 273–289; Wade, Attachm. § 221; *Butts v. Peacock,* 23 Wis. 359.

For the respondent there was a brief by *Miller, Noyes & Miller,* and oral argument by *B. K. Miller, Jr.*

NEWMAN, J. The judgment roll was competent evidence of the plaintiff's claim against the firm, notwithstanding it failed to show service of a summons. It must be presumed that a summons was duly served. Where the record of a superior domestic court is silent upon the subject of the service of the process by which the court acquires jurisdiction of the defendant, it is presumed, in favor of the judgment, that lawful process was duly served. *Ely v. Tallman,* 14 Wis. 28; Freem. Judgm. (3d ed.), §§ 124–132, and cases cited.

The plaintiff's attachment was prior to the attachment by the appellant. Whether her lien upon the attached property shall be postponed to the lien of the appellant's attachment depends upon the determination of the question whether her claim is to be deemed *bona fide,* or whether it is fraudulent as against the appellant's claim. Not only is the appellant's attachment subsequent to the plaintiff's attachment, but her claim against the defendant is subsequent to Sommermeyer's conveyance of his lands to his wife. So the question of priority between these two claimants must depend upon the *bona fides* of the conveyance by Sommermeyer to his wife. It is evident that the property conveyed was greatly disproportioned to the alleged indebtedness to his wife. The sum alleged to have been loaned was small. The value of the property conveyed was relatively large. Only a part of it was sold, out of which the alleged loans were made which are the foundation of the plaintiff's claim. And these did not comprise all the proceeds of those sales, for the plaintiff had and used a part of such proceeds. So

the conveyance was intended to be not only a repayment of moneys loaned, but in large part a settlement upon the wife. It was of substantially all the husband's property. It was soon after he had formed a copartnership for a new enterprise. It was, in part at least, to provide against the contingency of ill success in the new enterprise. It was intended as a provision against just what did happen; for Sommermeyer testifies, in substance, that his wife had lost confidence in his business ability and judgment, by reason of the failure of his enterprises, and that she wanted him at that time to provide for her and for the children. This was to secure the benefit of the property to himself and to his family. No doubt such a conveyance, made for such a purpose, is void, even as against subsequent creditors. R. S. sec. 2320. It is well settled that a husband may make a voluntary settlement upon his wife, not unreasonable in amount in view of his property and circumstances at the time, where there is no fraudulent intention in fact, which cannot be impeached by subsequent creditors. *Pike v. Mills,* 23 Wis. 164. In that case the settlement was of the homestead and a small tract of land outside, leaving the husband worth at least $75,000 above his debts. The settlement was upheld. But if the settlement is unreasonable in amount in view of the property and circumstances of the husband, or if there is an intention in fact to defraud existing creditors, or creditors whose rights are expected to shortly supervene, or creditors whose rights may and do so supervene, the settler purposing to throw the hazards of business in which he is about to engage upon others, instead of honestly holding his means subject to the chances of those adverse results to which all business enterprises are liable, the settlement is impeachable by a subsequent creditor. *Case v. Phelps,* 39 N. Y. 164; *Smith v. Vodges,* 92 U. S. 183; *Fisher v. Lewis,* 69 Mo. 631; *Black v. Nease,* 37 Pa. St. 438.

The evidence very clearly shows that the plaintiff's claim

to the fund in court is fraudulent as against the appellant's claim. As against the appellant's claim, she is not entitled to the fund. Besides, in a contest between the husband's creditors and the wife, transactions between her and her husband are to be closely scrutinized. *Breslauer v. Geilfuss,* 65 Wis. 377. Nor can the plaintiff's attachment be sustained in part, for so much as involves her husband's original debt to her. She has involved that with a claim which is fraudulent. The good and bad cannot be separated. The fraud corrupts and destroys the whole. *Fairfield v. Baldwin,* 12 Pick. 388.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment in accordance with this opinion.