SAWYER, Administrator, Appellant, vs. METTERS, Respondent.

*October 16—November 5, 1907.*

*Executors and administrators: Recovery of assets fraudulently conveyed by decedent: Future creditors: Estoppel: Evidence: Burden of proof: Gifts: Husband and wife: Consideration: Preference: Married women: Earnings.*

1. Language in the opinion in *Ecklor v. Wolcott,* 115 Wis. 19, to the effect that it must appear, in order to entitle an administrator to maintain an action under sec. 3832, Stats. (1898), to set aside a conveyance by his decedent made in fraud of creditors, that there will be a deficiency of assets to pay the creditors existing at the time of the transfer, is *held* to have been used inadvertently, not necessary to the decision of the case, and not a correct statement of the law.

2. Where there is a deficiency of assets an administrator may, under sec. 3832, Stats. (1898), attack his decedent's transfer in ·fraud of creditors, for the purpose of satisfying claims allowed

Sawyer v. Metters, 133 Wis. 350.

which were not in existence at the time the conveyance sought to be set aside was made.

3. In an action by an administrator under sec. 3832, Stats. (1898), to set aside a deed given by the decedent to his wife, alleged to be in fraud of creditors, it appeared, among other things, that at that time decedent owed nothing and had other property aggregating $1,900; that none of the creditors in whose favor the action was prosecuted became such until sixteen months after the transfer; that the conveyance was made to the wife in payment of moneys advanced to decedent by way of loan; and that his indebtedness to his wife was about the value of the land. It also appeared that decedent retained no interest in the property conveyed, and there was no evidence tending to show any intent by either the husband or wife to defraud creditors. *Held*, that a judgment dismissing the action should be affirmed.

4. In such case testimony that the husband, after the conveyance, had represented that he owned the land, such representations not being shown to have been known to the wife except in one instance to one not a creditor, which she denied and wherein her testimony was corroborated, is *held* to have established no estoppel against her.

5. In an action by an administrator under sec. 3832, Stats. (1898), to set aside a deed given by the decedent to his wife, alleged to be in fraud of creditors, the burden of proof is on the plaintiff to establish an estoppel against the wife, as also to show that the conveyance was fraudulent, where it appeared that the husband had no debts at the time the conveyance was executed except a debt to his wife, and the conveyance was upon a valuable consideration moving from the wife.

6. A husband may make a valid gift to his wife at a time when he is not indebted, if the transaction is in good faith; and in a contest with subsequent creditors the wife is not bound to show that she paid a valuable consideration.

7. Where the husband is, at the time of a conveyance to his wife, free from debt except to his wife, and the conveyance is made in payment of that debt which is substantially equal to the value of the property conveyed, he has a lawful right to prefer his wife to creditors on subsequently contracted debts.

8. A husband, when free from debt, has a right to give to his wife her earnings which otherwise might belong to him, and they thereupon become her property to all intents and purposes.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff as administrator of the estate of John P. Metters, deceased, against the defendant, his widow, to set aside a certain deed dated February 28, 1903, from deceased to defendant conveying an interest in lands in Grant county, Wisconsin. The action was commenced under sec. 3832, Stats. (1898). The plaintiff's claim as set up in the complaint is that the conveyance was made by John P. Metters with the intent to defraud future creditors, the said Metters, as was alleged in the complaint, being at the time of the conveyance about to engage in business at Bigelow, Minnesota, and that such fraudulent intent was participated in by the defendant. The defendant in her answer put in issue the material allegations of the complaint. The court found the following facts:

At the time of the marriage of John P. Metters to defendant he had no money or property and previous to that time had by an accident lost both hands at the wrists. The defendant had about $600 in money, and afterwards had received several sums from her relatives, which sums were turned over to John P. Metters and used up in living expenses. That in March, 1903, said John P. Metters and defendant moved to Minnesota, where said Metters engaged in business. Thomas Metters, father of John P. Metters, died April 18, 1904, and by his will devised to John P. Metters an undivided one-half of ninety-one acres of land, subject to a life estate therein, and also gave John P. Metters one fourth of the personal property. Afterwards the executors paid John P. Metters his legacy, aggregating about $1,414. In December, 1894, John P. Metters bought a homestead for which he paid $350, and took the deed in the name of the defendant. Prior to January, 1903, there had been no agreement or understanding between defendant and her husband that she should be paid the amount turned over to John P. Metters. On February 28, 1903, John P. Metters deeded the undivided one-half of the ninety-one acres of land men-

tioned in the complaint to his wife, the defendant. The deed expressed a consideration of $2,075, but there was no consideration paid by defendant at the time of the execution of the deed. It was, however, understood between defendant and her husband that the money to be received from the sale of the homestead, which they were about to dispose of and which was in defendant's name, should be taken by John P. Metters to help him in his business at Bigelow, Minnesota. The main object in view by both parties in the deeding of said land to defendant was to prevent it from being subject to the debts of John P. Metters if the Bigelow business should be a failure. At the time of the execution of this deed John P. Metters owed nothing. In March, 1903, the homestead was sold for $775, and defendant turned this money over to John P. Metters. On March 4, 1903, defendant's husband bought a bill of goods for the store at Bigelow amounting to $656.59 and paid thereon $156.59, and defendant and her husband secured the payment of the balance, $500, by a mortgage on the land in question. She afterwards paid this mortgage, using $300 she received from the estate of her mother. Defendant's husband, John P. Metters, had about $1,900 capital at the time he removed to Bigelow. He entered into business there in keeping a general store with one C. T. Millard under the name of Metters & Millard. The firm continued to do business from the spring of 1903 until about January 30, 1906, at which last-named date said Metters and C. T. Millard executed a trust deed to the plaintiff for the benefit of creditors of the firm of Metters & Millard, which included all the property owned by Metters and Millard, or either of them, except exempt property and real estate in Wisconsin owned by John P. Metters. From the proceeds of the stock and property transferred to the trustee part of the indebtedness was paid, but there was not sufficient to pay all indebtedness. On January 30, 1904, the firm of Metters & Millard gave a property statement for the pur-

pose of obtaining credit, in which it was set forth that Metters owned forty-six and one-half acres of land of the value of $4,500, and afterwards the firm gave property statements to the effect that Metters owned forty-six and one-half acres of land in Wisconsin of the value of $4,500, and that Metters often talked to salesmen stating that he owned this land and that it was very valuable. Defendant was not present at the times these statements were made by her husband and did not sanction them, except that soon after their arrival in Bigelow she went with her husband to the home of Millard, and at this time Metters stated in the presence of defendant that he owned this land in Wisconsin. The interest of John P. Metters in the Wisconsin land was worth $2,500 February 28, 1903, when he deeded it to his wife. John P. Metters died February 10, 1906. Soon after defendant's marriage to John P. Metters she turned over to him $600 and between $300 and $400 which she received from her relatives, also proceeds of other property received from her relatives aggregating $365. The defendant was an industrious, economical, hard-working woman, and her husband for several years after their marriage was sickly and unable to do much work or earn anything towards the support of himself and wife, but after his health improved and before going to Bigelow, Minnesota, he earned some money.

The court concluded as matter of law that under the rule laid down in *Ecklor v. Wolcott,* 115 Wis. 19, 90 N. W. 1081, the plaintiff could not recover and ordered the action dismissed. Judgment was entered for the defendant. The plaintiff appealed upon the record, contending that upon the facts established by the findings and evidence he was entitled to judgment. The defendant excepted to the findings and caused a bill of exceptions to be settled.

The cause was submitted for the appellant on the brief of *Geo. B. Clementson,* attorney, and *A. E. Boyesen,* of counsel, and for the respondent on that of *Brown & Brennan* and *Bucklin & Bucklin.*

KERWIN, J.   The main contentions of appellant are
(1) that the case at bar is not ruled by *Ecklor v. Wolcott,*
115 Wis. 19, 90 N. W. 1081; and (2) that the findings and
evidence warrant judgment for plaintiff.

1. As we have seen, the court below dismissed the action
and gave judgment for defendant on the strength of *Ecklor v.*
*Wolcott,* 115 Wis. 19, 90 N. W. 1081, because of certain
language used to the effect that under sec. 3832, Stats.
(1898), it must appear, in order to entitle the administrator
to maintain the action, that there will be a deficiency of
assets to pay creditors existing at the time of the transfer.
This language was obviously inadvertently used by the court
and was not necessary to the decision of the case, since the
case turned upon the want of any evidence showing "that
there was or would be any deficiency of assets in the estate to
meet all proper claims against it of any nature."   The lan-
guage in the opinion in the *Ecklor Case,* to the effect that it
must appear that the suit under this statute can be main-
tained by the administrator only on account of creditors ex-
isting at the time of the transfer, is not a correct statement
of the law, and, so far as out of harmony with the doctrine
laid down here, must be regarded as overruled.   *Borchert*
*v. Borchert,* 132 Wis. 593, 113 N. W. 35.   It is established
in the case before us that there are claims allowed against
the estate of John P. Metters, deceased, which there are no
assets to pay, although these claims did not exist at the time
of the transfer in question.   The vital question, therefore,
under this head is whether an action under this statute by
an administrator can be maintained for the purpose of sat-
isfying claims allowed against the estate not in existence at
the time the conveyance sought to be set aside was made, but
which were in contemplation.   There can be no doubt under
the authorities that an action can be maintained by an ad-
ministrator under sec. 3832, Stats. (1898), to set aside a
conveyance fraudulent as to future creditors whose claims

arose after the conveyance and who were in the contempla-
tion of the grantor at the time of the conveyance and who
were intended by the grantor to be defrauded by such convey-
ance.   So we think it clear that an administrator may at-
tack his decedent's transfer in fraud of a future creditor
whose claim has been allowed where there is a deficiency of
assets.   The statute (sec. 3832) seems clearly to warrant this
construction and cover a fraudulent transfer during the life-
time of deceased affecting future creditors as well as cred-
itors existing at the time of the transfer.   It provides:

"When there shall be a deficiency of assets in the hands of
an executor or administrator and when the deceased shall
in his lifetime have conveyed any real estate or any right or
interest therein, with intent to defraud his creditors or to
avoid any right, debt or duty, or shall have so conveyed such
estate that by law the deeds or conveyances are void as
against creditors, the executor or administrator may and it
shall be his duty to commence and prosecute to final judg-
ment any proper action for the recovery of the same, and
may recover for the benefit of the creditors all such real es-
tate so fraudulently conveyed," etc.

This language is broad and was manifestly intended by
the legislature to cover all conveyances made by decedent in
his lifetime and which "by law are void as against creditors."
Now there can be no doubt that a conveyance under some
circumstances may be void as to future creditors whose claims
were not in existence at the time of such conveyance, and
therefore may be set aside by the administrator in suit
under sec. 3832, Stats. (1898).   *Sommermeyer v. Schwartz,*
89 Wis. 66, 61 N. W. 311; *Zimmerman v. Bannon,* 101 Wis.
407, 77 N. W. 735; *Hoffman v. Junk,* 51 Wis. 613, 8 N. W.
493; *Case v. Phelps,* 39 N. Y. 164; *Smith v. Vodges,* 92
U. S. 183; *Fisher v. Lewis,* 69 Mo. 629; *Black v. Nease,* 37
Pa. St. 433.

2. The next and important question presented is whether
the deed from John P. Metters to his wife, the defendant,

made on the 28th day of February, 1903, should be set aside because void as to creditors. It is established by the findings and evidence without substantial dispute that the deed in question was recorded March 2, 1903; that John P. Metters owed nothing at that time, and had other property aside from the real estate conveyed to defendant aggregating in value $1,900; that none of the existing creditors had any claim against Metters for sixteen months after the execution of the deed to defendant; that the conveyance was made to defendant in payment of money advanced to Metters by defendant and which was considered a loan to him; that the consideration named in the deed was about the amount advanced by defendant and which Metters considered due her when he made the conveyance; and that he considered his interest in the land conveyed worth about the amount named in the deed. It also appears that on March 4, 1903, Metters bought a bill of goods amounting to $656.59 for the contemplated business at Bigelow and paid thereon $156.59, and the defendant joined in a note and mortgaged her interest in the land in question to secure the balance due on this bill, namely, $500, and that she afterwards paid this mortgage with $300 thereafter received from her mother's estate and $200, the proceeds of a note received for money earned by her during her marriage. So it appears from the evidence that the conveyance of the land in question was for a good and substantial consideration and that Metters retained, or intended to retain, no interest in the property conveyed to defendant. We find no evidence in the record tending to show any intent on the part of defendant or John P. Metters to defraud creditors. On the contrary, all the evidence seems to show that no such intention existed. True, the court below found that there was no consideration paid by defendant at the time of the execution of the deed, but it also found that it was understood between defendant and her husband, John P. Metters, that the money to be received from the sale

of the homestead, amounting to $775, should be taken by Metters to help him start in business at Bigelow, and the proof establishes that the advances heretofore referred to were made by defendant to her husband, and that the conveyance was made in payment of all money received by Metters from defendant, amounting in the aggregate, including the proceeds of the homestead and the $500 note and mortgage, to upwards of $2,200. Point is made by appellant that John P. Metters represented and held out to creditors, for the purpose of obtaining credit, that he owned the land in question, and so represented to Millard when he entered into partnership with him. There is no evidence that defendant knew of such representations, except the evidence of Millard to the effect that Metters stated in her presence that he owned land in Wisconsin. This statement is denied by defendant and her evidence is corroborated. Millard is not a creditor, and there is no evidence that defendant knew that any representation was ever made by John P. Metters to any creditor that he owned the land after it was conveyed to defendant. The court below found that it was not established that defendant was present at any of the statements or sanctioned them, except the one in the presence of Millard above referred to. The appellant therefore failed to prove an estoppel against defendant. The burden of proof upon this point was upon the appellant. *Wheeler & W. Mfg. Co. v. Monahan,* 63 Wis. 198, 23 N. W. 127. We think it clear, also, that the burden was upon the appellant to show that the deed to defendant was fraudulent. The deceased had no debts at the time the deed was executed except the debt to his wife, and the deed was based upon a valuable consideration moving from defendant. Under such circumstances the burden was upon the appellant. *Matthai, I. & Co. v. Heather,* 57 Md. 483; *Stoutz v. Huger,* 107 Ala. 248, 18 South. 126; *Wynne, L. & Co. v. Mason,* 72 Miss. 424, 18 South. 422; *Hagerman v. Buchanan,* 45 N. J. Eq.

292, 17 Atl. 946; *Greer v. O'Brien,* 36 W. Va. 277, 15 S. E. 74; *Dygert v. Remerschnider,* 32 N. Y. 629, 649; *W. Crane & Sons v. Barkdoll,* 59 Md. 534; *Rudershausen v. Atwood,* 19 Ill. App. 58; *Semmens v. Walters,* 55 Wis. 675, 13 N. W. 889.

This court has held that a husband may make a valid gift to his wife at a time when he is not indebted, when the transaction is in good faith, and in a contest with subsequent creditors the wife is not bound to show that she paid a valuable consideration. *Wheeler & W. Mfg. Co. v. Monahan, supra.* How much stronger in favor of the conveyance is the instant case, where the husband was not only free from debt, except to his wife, at the time the conveyance was made, but it was made in payment of a *bona fide* debt due from him to her in a sum, substantially at least, equal to the value of the property conveyed. Neither the evidence nor the finding to the effect that the object of the parties in deeding the land was to prevent it from being subject to the debts of Metters, if the Bigelow business should be a failure, shows any fraudulent purpose. At most, all this can be said to mean is that it was intended to pay the defendant's debt, though such payment might result in preferring it to subsequent debts contracted by Metters. This was what the parties to the deed had a lawful right to do, and there is nothing in the evidence or findings tending to show any other intention. Under such circumstances the deed to defendant cannot be questioned in this action. *Second Nat. Bank v. Merrill,* 81 Wis. 142, 50 N. W. 503; *Whiting v. Hoglund,* 127 Wis. 135, 106 N. W. 391; *Wheeler & W. Mfg. Co. v. Monahan,* 63 Wis. 198, 23 N. W. 109; *W. Crane & Sons v. Barkdoll,* 59 Md. 534; *Kane v. Desmond,* 63 Cal. 464; *Tootle, H. & Co. v. Coldwell,* 30 Kan. 125, 1 Pac. 329.

We have carefully examined the brief of counsel for appellant, but shall not attempt to review the cases cited. One of the strongest cases cited in favor of appellant's main con-

tention is *Sommermeyer v. Schwartz,* 89 Wis. 66, 61 N. W. 311. But it will be seen that in this case the property conveyed to the wife was largely in excess of the indebtedness to her. As said by the court, the conveyance was intended to be "in large part a settlement upon the wife." Besides, there are features of the case strongly tending to show that the transaction was fraudulent. But even in this case the court recognizes the right of the husband to make a voluntary settlement upon his wife not unreasonable in amount, where there is no fraudulent intent, which cannot be impeached by subsequent creditors. In the case before us the conveyance was in payment of a *bona fide* debt, meritorious in character, and quite adequate to the value of the property conveyed in payment of it. Moreover, the evidence shows that the business at Bigelow was carried on in good faith and with intent to pay all creditors. None of Metters' present creditors had any claim against him for about sixteen months after the conveyance. The $656.59 purchase made at about the time of the conveyance, and for which defendant mortgaged the real estate in question to secure the unpaid portion of the bill, went into the Bigelow business, together with $775, proceeds of the homestead, and all the facts and circumstances surrounding the transaction not only show that the deed to defendant was upon a good consideration, but that there was no intention in the execution of it to defraud future creditors. It is urged by counsel for appellant that $200 of the $500 paid by defendant on the mortgage belonged to her husband. But the evidence does not support this contention. True, it appears she earned this money during marriage, and long before the conveyance loaned it and took notes in her own name, which notes were afterwards paid and the proceeds thereof applied on the $500 mortgage. Now, even if this $200 earned by defendant in law belonged to Metters, he had a right, when free from debt, to give it to defendant, and it then became her money to all intents and purposes. So,

when she paid it on the $500 mortgage it was her money and not her husband's.

We are convinced that upon the findings and the established facts the conveyance in question was not fraudulent, and therefore the judgment below is right and should be affirmed.

*By the Court.*—The judgment of the court below is affirmed.