GOETZ, Trustee, Respondent, vs. NEWELL and another, Appellants.

*March 15—April 8, 1924.*

*Fraudulent conveyances: Property transferred to wife: Control by husband: Bankruptcy of husband: Action by trustee to recover property: Evidence: Sufficiency: Property in excess of claims filed: Right of trustee to recover.*

1. In an action by a husband's trustee in bankruptcy against the bankrupt and his wife to recover personal and real property held in the wife's name, the evidence is *held* to show that the husband caused the property to be placed in the name of his

wife with the fraudulent intent to hinder, delay, and defraud creditors; that the husband continued to exercise control over the property; and that the wife merely held the naked legal title as the agent of her husband.    p. 566.

2. Under secs. 2306 and 2320, Stats., fraudulent conveyances made with intent to hinder, delay, or defraud creditors are not merely voidable but void.    p. 565.

3. The transfer by the husband to his wife of personal property over which he continued to exercise control is *held* not to vest title thereto in the wife as against the husband's creditors, since the gift was never fully executed.    p. 565.

4. Where an action by the trustee in bankruptcy of the husband to recover property transferred to the bankrupt's wife was tried before the expiration of the time for creditors to file claims against the bankrupt estate, a judgment requiring the transfer to the trustee of property in an amount greatly in excess of the claims then filed and awarding a money judgment in favor of the trustee in lieu of a recovery of real estate conveyed to the wife by the bankrupt, is proper under the Bankruptcy Act (U. S. Comp. Stats. secs. 9585 *et seq.*).    p. 569.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge.    *Affirmed.*

The appeal is from a judgment in favor of the plaintiff directing one Trost, as receiver, to transfer and deliver certain personal property, consisting of securities, to the plaintiff, and from a judgment against the defendants for the sum of $50,000.

For the appellants there was a brief by *W. J. Kershaw, Horace B. Walmsley, Jacob S. Rothstein,* and *W. A. Schroeder,* all of Milwaukee, and oral argument by *Mr. Walmsley.*

For the respondent there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish,* of counsel, all of Milwaukee, and oral argument by *I. A. Fish* and *J. H. Marshutz.*

DOERFLER, J.    On the 27th day of April, 1921, the defendant *Isaac O. Newell* was adjudged a bankrupt by the United States district court for the Eastern district of Wis-

consin, and the plaintiff herein was duly elected and quali-
fied as his trustee. The action is one in equity to recover
from the defendants certain personal and real property be-
longing to the bankrupt, in order that the plaintiff, as trus-
tee, might fully administer thereon in accordance with the
provisions of the Bankruptcy Act.

The complaint, among other things, alleges that the de-
fendant *Isaac O. Newell,* in order to make himself execu-
tion proof, transferred all of his property to his wife, *Leila
C. Newell,* and that such transfer was made in fraud of
creditors, past, present, and future; that while the property
was placed in the name of the wife it in reality belongs to
the defendant *Isaac O. Newell,* and that he at all times ex-
ercised dominion and control thereof; and that the wife par-
ticipated in such fraudulent intent with full knowledge of
all the facts.

The findings of fact, which are full and complete, are to
the effect that said *Isaac O. Newell* (hereinafter referred
to as the doctor) is a physician and surgeon, and that from
and after the year 1897, and up to six years prior to the
trial herein, engaged in illegal practices in his profession,
with the knowledge of the said *Leila C. Newell* (hereinafter
called the wife), both parties realizing that well-founded
claims and demands for damages would probably arise
against the doctor in consequence thereof; that after the
year 1897 the doctor purchased a number of pieces of real
estate, which he placed in the name of his wife for the pur-
pose of hindering, delaying, and defrauding creditors, and
that after such purchases he exercised full dominion and
control over such real estate and treated it to all intents and
purposes as his own; that the doctor also opened a bank ac-
count in the name of his wife, to the credit of which he de-
posited all funds which came into his possession, whether
they represented the proceeds of his business, the rents col-
lected from the real estate, or the proceeds derived from
the sale of real estate or of securities and other personal

property; that he had sole authority to withdraw funds by check or otherwise from said account, and that the moneys so deposited were wholly under the dominion and control of the doctor; that the doctor also maintained a safety-deposit box in a bank in the name of his wife, wherein he deposited his personal securities and his title deeds, and that he at all times exercised full and complete control and dominion over such property so deposited, and that he had delivered to him a key giving him access to such deposit box at all times. That the wife at no time exercised any control, dominion, or right of ownership over any of said property, whether real or personal; that the doctor had full power and authority to indorse and transfer all bills of exchange, notes, checks, and other securities in the name of the wife, and exercised such power throughout the period aforesaid up to the time of the bankruptcy; that Trost, the receiver appointed in this action, obtained from the safety-deposit box bonds, mortgages, and certificates of stock of the value of about $100,000; that the real estate of the doctor held in the name of his wife was of the value of $50,000; that the plaintiff has elected to recover the value of the real estate instead of the property, as is authorized by the Bankruptcy Act.

As conclusions of law the court found:

"1. That the personal property described in the eleventh finding of fact was the property of *Isaac O. Newell* at the time of bankruptcy, and passed to the plaintiff herein on bankruptcy.

"2. That the real estate described in the answer herein was the property of *Isaac O. Newell* at the time of bankruptcy, and that *Leila C. Newell* was an agent of said *Isaac O. Newell,* and held naked legal title thereto and no beneficial interest therein, and that all beneficial interest in said real estate passed to the plaintiff herein on bankruptcy.

"3. That the said plaintiff is entitled to judgment against the defendants, *Isaac O. Newell* and *Leila C. Newell,* directing and authorizing the receiver herein, Hugo Trost, to transfer and deliver, indorsed, wherever necessary for trans-

fer, by the said receiver in behalf of *Leila C. Newell* and *Isaac O. Newell,* all of the personal property, mortgages, and securities described in the eleventh finding of fact, or the avails thereof in the hands of the said receiver.

"4. That because of the election of the plaintiff to take a money judgment, that title to the real estate now held in the name of *Leila C. Newell* is confirmed to her, free from the claims of the plaintiff and of *Isaac O. Newell,* and that the plaintiff is entitled to judgment against the said *Leila C. Newell* and *Isaac O. Newell,* in addition to the above, in the sum of $50,000, with interest thereon from the 26th day of April, 1921, to the date of entry of judgment, at the rate of six per cent. per annum, together with the costs and disbursements of this action."

Upon such findings of fact and conclusions of law judgment was entered in plaintiff's favor accordingly.

The total amount of the claims filed against the bankrupt's estate up to the time of the trial did not exceed $15,000. In their oral argument and in their brief defendants' counsel claim that the property referred to in the findings and judgment constituted the individual property of the wife; that she obtained title thereto during periods of time when the doctor had no judgment or other creditors; that the reason the doctor placed all of his property in his wife's name was that at the beginning of the period above referred to he was afflicted with a severe ailment which he deemed fatal, and from which he never fully recovered; that in transferring his property he would relieve his wife, who was his sole heir at law, from the annoyance and expense of probate proceedings; that the transfers were *bona fide* and were not made with intent to hinder, delay, or defraud creditors; that the evidence clearly establishes the *bona fides* of the transactions; that the wife is a person of great business capacity and ability; and that the evidence shows that she and not the doctor exercised full control and dominion over all such property.

An examination of the record, however, discloses that the contention of defendants' counsel is totally without founda-

tion. While the wife testified that she was the sole owner
and exercised sole control over all of the property, her testi-
mony was completely discredited. With few exceptions,
all of the checks drawn upon the bank were made out by the
doctor, and, in fact, an officer of the bank testified that no
other signature would be recognized by the bank excepting.
the signature of the wife by the doctor. Nearly all of the
bank vouchers had been destroyed prior to the hearing.
While the wife testified that she had sole control of the de-
posit box wherein were kept the securities, it clearly appears
that the doctor had a key and access to this box and that he
resorted thereto whenever occasion presented itself. While
the wife also testified that she purchased the real estate and
collected the rents, the record discloses that these transac-
tions were attended to by the doctor himself. Not only that,
but improvements upon the property were made by the doc-
tor and disputes with tenants were settled by him, he acting
in all respects as though the property were his sole, individ-
ual property. The office of the doctor was maintained in a
certain building on National avenue in the city of Milwau-
kee, and the rooms adjoining such office were occupied by
the parties as a dwelling. The wife attended to professional
telephone calls, participated in collecting the fees, and it
also appears from the evidence, beyond dispute, that she was
fully aware of and had knowledge of the criminal practices
engaged in by her husband. A number of suits brought
for malpractice and for criminal operations during the
period above mentioned were, to the knowledge of the wife,
settled, and she was also aware of the retention of attor-
neys and the payment of attorneys' fees in such cases.

Under such circumstances, it might well be that, as be-
tween the wife and the doctor, the former could claim title
to all of the property, and that a court of equity would not
grant the latter any relief in any action or proceedings in-
stituted to recover such property from the wife. But this
is not an action between husband and wife,—it is an action

brought by a trustee in bankruptcy to obtain the title and possession of all of the property of the doctor for the benefit of his creditors.

The statutes in existence at the time when these alleged fraudulent transfers were executed provided as follows:

Sec. 2320. "Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods, or things in action, or of any rents or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents or profits thereof, made with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts or demands; and every bond or other evidence of debt given, action commenced, order or judgment suffered, with the like intent as against the person so hindered, delayed or defrauded, shall be void."

Sec. 2306, Stats. 1921, provides:

"All deeds of gift, all conveyances and all transfers or assignments, verbal or written, of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against the creditors, existing or subsequent, of such person."

Under these statutes, fraudulent conveyances made with intent to hinder, delay, or defraud creditors are not merely voidable, but void.

The transfer of the personal property, under the facts in this case, did not give title to the wife as against creditors, because the gift thereof was never fully executed. This personal property was at all times treated by the husband as his own, and he could have exercised no greater dominion over the same than he did had he retained title in himself. In *Wilson v. Carpenter*, 17 Wis. 512, it is said: "The donor must part not only with the possession but with the dominion of the property." See, also, *Wilcox v. Matteson,* 53 Wis. 23, 9 N. W. 814; *Pirie v. Le Saulnier,* 161 Wis. 503, 154 N. W. 993; *Dickson v. Bills,* 144 Wis. 171, 128 N. W. 868; *Dupont v. Jonet,* 165 Wis. 554, 162 N. W. 664.

While the record discloses that the wife held the title to the real estate, such holding was, as found by the trial court, that of a mere agent or naked trustee. See, also, 12 Ruling Case Law, 670, and cases cited, and 27 Corp. Jur. 606, 616, and cases there cited.

No case has come before this court for review, and we have found none in other jurisdictions, where the fraudulent intent of the grantor or pretended donor, and the participation therein by the grantee or donee, have been more clearly and definitely established. All of the transfers were not only fraudulent as to creditors *ab initio,* but continued to remain fraudulent down to the date of bankruptcy and the trial. The exercise of full dominion and control of the property by the doctor over the entire period of time constituted a continuing fraud. The motive for the fraud is revealed by the illegal professional practices. Ostensibly the doctor treated this property as his own, and thereby held out to the world at large that he was the owner thereof; on the other hand, he intentionally created a situation which would enable him, with some degree of plausibility, to attempt to avoid his apparent ownership with respect to the rights of creditors.

It would be impossible to maintain organized government and society if transactions like those herein disclosed would receive the stamp of judicial approval or would meet with the approbation of the rank and file of the citizenship. The statutes on fraudulent conveyances above cited constitute a crystallization of the public sentiment in this state upon the subject. Such statutes exist quite generally throughout the states and are merely declaratory, for, independent of such statutes, the common law would not tolerate the individual to take advantage of any such situation to the detriment of *bona fide* creditors. Camouflage designed for deception in times of war is thought justifiable. In fact, nearly everything which deviates from the standard of morality and honesty appears to be warranted during such periods. While

war is waged, the very life of a nation is at stake, and there-fore there is brought into play, with approval, the law that self-defense is the first and highest law of nature. In times of peace, however, these considerations do not prevail, and well organized society, particularly under a democratic form of government, requires a standard of morality based on mutual honesty. We therefore must approve the able and comprehensive findings of fact of the learned trial judge in regard to the effect of the fraudulent acts herein complained of.

Counsel for the defendants also complain of that portion of the judgment pursuant to which property of the value of about $100,000 is adjudged to be transferred by the receiver to the trustee in bankruptcy, and of the judgment for $50,000 against the defendants under the Bankruptcy Act, in lieu of a recovery of the real estate; and in that behalf it is alleged that only a small portion of such property will be necessary to satisfy the claims of creditors; that a trustee in bankruptcy primarily represents the interests of creditors; and that when a sufficient amount of property is appropriated to meet all possible demands which creditors might have, then the requirements of the Bankruptcy Act are fully met and satisfied. Conceding that there is some merit in counsel's contention, we must nevertheless admit that we are not here concerned with the equitable considerations advanced. Congress, in the enactment of the Bankruptcy Act, has seen fit to require a bankrupt to schedule all of his property. Under the law as it existed in this state prior to the enactment of the national Bankruptcy Act, an assignor, in making an assignment of his property for the benefit of his creditors, was required to transfer all of his property, and such transfer was merely for administrative purposes. Upon the conclusion of the proceedings the assignee was legally bound to account to the assignor for all property not necessary in the assignment proceedings.

Sub. *a*, sec. 70, of the Bankruptcy Act vests in the trustee,

by operation of law, the title of the bankrupt as of the date he was adjudged a bankrupt, of all of his property, whether real or personal, with certain exceptions. The bankruptcy occurred on April 27, 1921. The right of creditors to file claims expired one year thereafter. The trial herein did not close until April 20, 1922, so that the time for creditors to file claims had not yet expired. Sub. *a*, sec. 70, of the Bankruptcy Act was construed by the federal supreme court in *Globe Bank & T. Co. v. Martin*, 236 U. S. 288, 296, 35 Sup. Ct. 377, where it is said:

"Under sub. *a*, sec. 70, of the Bankruptcy Act the trustee of the estate is vested with the title of the bankrupt, including all property transferred by him in fraud of creditors and property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." See, also, *Security W. Co. v. Hand*, 206 U. S. 415, 425, 426, 27 Sup. Ct. 720.

The learned author of Black on Bankruptcy, in the third edition of his work, on page 944 says:

"It follows that the trustee in bankruptcy may, by proper proceedings, avoid or annul any transfer made by the bankrupt which any creditor might have attacked by similar proceedings. (See numerous cases under note 11.) In fact, the trustee occupies exactly as strong a position, and especially since the amendment of 1910, as a creditor who has levied an attachment or one who holds a judgment or an unsatisfied execution, and he may maintain a suit to set aside any fraudulent conveyance made within four months before the filing of the petition in bankruptcy, which could have been attacked by creditors in that position, although the particular transaction would have been valid and binding as between the immediate parties to it. . . . But more than this, the act provides (sub. *e*, sec. 67) that property conveyed in fraud of creditors shall 'be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee,' and also (sub. *a*, sec. 70) that the trustee shall be vested with title to property conveyed by the bankrupt in fraud of his creditors. As to such property, therefore,

the trustee is not merely a successor to the rights of de-frauded creditors, but he is invested with the title, and may sue to vacate or avoid any fraudulent transfer of the bank-rupt's property, whether or not there is any creditor armed with a lien or otherwise in position to attack such trans-fer. . . ."

The court confirmed the title of the real estate in the defendant *Leila C. Newell,* and, under the election provided for in the Bankruptcy Act, authorized a judgment against the defendants for the value of the real estate, which is conceded to be the sum of $50,000, continuing, however, the lien of such judgment against such real estate.

*By the Court.*—The judgment of the trial court is affirmed.