Dockry v. Isaacson, 187 Wis. 649.

Dockry, Trustee in Bankruptcy, Appellant, vs. Isaacson, Respondent.

*September 23—October 20, 1925.*

*Fraudulent conveyances: Transactions between husband and wife: Bankruptcy: Preferential transfers: Repayment of money received from wife: Fraudulent intent: Action by trustee: Burden of proof.*

1. Since husband and wife have unusual facilities for perpetrating fraud upon creditors, transactions between them affecting the husband's creditors will be closely scrutinized.   p. 651.
2. Under sec. 2342, Stats., a solvent husband has a perfect right, as against subsequent creditors, to make a gift to his wife. p. 652.
3. A husband who had given money to his wife and had invested it for her in land, taking the title in his own name, had a right to repay her at a later time, in good faith, as he might pay any other indebtedness.   p. 652.
4. Although the court found certain subsequent transactions between the husband and wife to have been made without consideration and with fraudulent intent, it does not necessarily follow that the earlier transfer, which was for full consideration, should be treated in the same manner.   p. 652.
5. A trustee in bankruptcy seeking to recover money alleged to have been fraudulently paid by the bankrupt husband to his wife has the burden of proof.   p. 653.

Appeal from a judgment of the circuit court for Florence county: W. B. Quinlan, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Cady, Strehlow & Kaftan* of Green Bay, and oral argument by *Max H. Strehlow.*

For the respondent there was a brief by *Reynolds & Dwyer* of Green Bay, and oral argument by *John W. Reynolds.*

Jones, J. This is an action to set aside a transfer of certain real estate, the assignment of a mortgage, and the payment of $3,500 to the defendant by her husband, I. H.

Isaacson, shortly before the husband was declared a voluntary bankrupt.

Isaacson married the defendant in 1914, and as a result of a successful business venture, called the Lindquist deal, gave his wife the sum of $3,500 in 1919. According to the testimony, in that same year the defendant turned over this sum of $3,500 to her husband, who used it to purchase certain lands in Iron county known as the Gibbs land. This Gibbs land was sold by Isaacson in 1922, and the sum of $3,500, which his wife had turned over to him to assist in the purchase, was returned to her about February 1, 1923. In 1920 Isaacson became connected with the Green Bay Forest Products Company, and in 1922 obtained from that company a contract for stumpage upon some timber lands controlled by the company. He hired one Netzer to get the timber out, but Netzer failed to perform as efficiently as was expected and Isaacson found himself to be on the verge of bankruptcy in the spring of 1923. The land in question was transferred to the wife by a deed dated February 23, 1923, and the mortgage was assigned on June 25, 1923, and Isaacson was declared a voluntary bankrupt on July 23, 1923.

In 1916 Isaacson gave to his wife about $2,500, which she invested in a homestead, and at other times when he was solvent he gave her sums of money with some of which she bought an automobile. When the petition in bankruptcy was filed Isaacson had assets of little value and indebtedness of about $16,000, of which considerable was incurred before the payment to his wife of the $3,500. Before he became involved in the unsuccessful logging contract his credit had been good, no judgments had been obtained against him, and he had paid his debts. He had invested $2,500 in the Green Bay Forest Products Company. There was considerable testimony as to the disposition by *Mrs. Isaacson* of the $3,500. According to the evidence she used $2,000 to pay the men of Isaacson in his

logging operations, $500 was put into the home, $512 was put into the mortgage the assignment of which was set aside, and other sums were spent for repairs on the house and used to pay bills, and at the time of bankruptcy she had only $102 remaining. The testimony was undisputed that the logging operations by the Green Bay Forest Products Company were unfortunate by reason of hard conditions which during the season unfavorably affected other loggers, causing heavy losses.

The trial court found that the land transfer and the assignment of the mortgage were in fraud of creditors and set them aside, but held that the sum of $3,500 was not paid under such circumstances as to justify setting it aside, holding that it was not paid for the purpose of defrauding creditors, but was a return to the defendant of funds previously advanced by her to Isaacson. From this ruling upon the question of the return of the $3,500 the trustee in bankruptcy appeals.

The action was not brought to set aside transfers as preferences, but on the ground of actual fraud. Much stress is given by the appellant's counsel to the fact that the moneys and certificates of deposit of Isaacson were kept in the house in a safe, that his wife had access to them, and it is claimed that at all times he was the real owner, and that the alleged gifts were not such in fact but a mode of handling his money. It is also urged as very significant that no accounts were kept between them. The testimony as to the principal facts was practically undisputed and plaintiff's counsel based their claims for judgment on the testimony given by the defendant and her husband.

It is undoubtedly true that since husband and wife have unusual facilities for perpetrating fraud upon creditors, transactions between them may be closely scrutinized in cases of this kind. But it is equally true that when a husband is solvent he has a perfect right, as against subsequent creditors, to make gifts to his wife. Under some circum-

stances such gifts are highly meritorious, deserving of commendation rather than criticism. The following is our statute:

"Section 2342. Any married female may receive by inheritance or by gift, grant, devise or bequest from any person, hold to her sole and separate use, convey and devise real and personal property and any interest or estate therein of any description, including all held in joint tenancy with her husband, and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried, and the same shall not be subject to the disposal of her husband nor be liable for his debts. Any conveyance, transfer or lien executed by either husband or wife to or in favor of the other shall be valid to the same extent as between other persons."

This is a very broad statute and materially changes the rule as to the burden of proof which was declared in some of the early decisions. In this case there is no ground for questioning the right of Isaacson to make the gifts to his wife which were used by her in buying a homestead or an automobile. If in 1919 when he was solvent he gave her $3,500, that money became her separate estate and she could dispose of the money as she saw fit. If her husband invested it for her in the purchase of land although title was taken in his name, he had the right to repay her at a later time, in good faith, as he might pay any other indebtedness.

Some claim is made that *Mrs. Isaacson* had notice, when she received the $3,500, that her husband was financially embarrassed and insolvent. This was denied by the defendant, and there is no testimony from which any such notice could be found except that of a witness who communicated with her in March by telephone informing her that her husband was not making proper reports to the corporation in which he was an officer.

It is argued that since the transfer of certain real estate and a mortgage were found by the court to be with fraudulent intent, the same finding should have been made as to the payment of the $3,500. This last transaction was some

time earlier than the others and, according to the findings of the trial court, for full consideration, while the others had no consideration. It is plain that it does not necessarily follow that all the transfers should be treated in the same manner. Counsel for appellant rely greatly on *Goetz v. Newell,* 183 Wis. 559, 198 N. W. 368. It seems to us that any examination of the opinion in that case will show so wide a difference between its facts and those in the case before us that no discussion of the distinction is required. Such authorities as the following are more nearly in point: *Ripon H. Co. v. Haas,* 157 Wis. 466, 145 N. W. 1096; *Sawyer v. Metters,* 133 Wis. 350, 113 N. W. 682; *Wheeler & Wilson Mfg. Co. v. Monahan,* 63 Wis. 198, 23 N. W. 127; 12 Ruling Case Law, 513. On the testimony in this case the question of fraud was one of fact, and the burden of proof was on the plaintiff. The record shows that there was a careful investigation of the facts and circumstances by the trial judge, and under the familiar rule we see no reason to disturb the judgment.

*By the Court.*—Judgment affirmed.